ALBANY,
Sept. 1823.

Dale
v.
M'Evers.

For affirmance, 20—For reversal, 3.

---

CHARLES AUGUSTUS DALE & others, appellants,
*against*
CHARLES M'EVERS & others, respondents.

Where the complainant in Chancery omits to reply, and sets down the cause for hearing on bill and answer, the latter will be taken as conclusive proof of the facts which it sets up by way of defence.

If the complainant mean to question the truth of the answer, he should reply, and give the defendant an opportunity to take his proofs.

A mortgagee may pay off a senior incumbrance ; and on bill filed to foreclose, and to be reimbursed the sum which he has paid, he is entitled to a decree for indemnity out of the proceeds of the sale of the mortgaged premises.

But whether, if he purchase the mortgaged premises under the senior incumbrance, he can have a decree for the price which he has paid, to be allowed out of the proceeds of a sale under his mortgage ? Quere.

Whether, in judgment of law, the interest which he thus acquires as purchaser is a full equivalent for the money which he pays? Quere.

Where W. held a mortgage against F., on lots in the city of New York, subject to a tax due to the corporation, and the lots were sold at auction for the tax, and the executors of the mortgagee bid them in for a term of

one year, at the amount of the tax, and then filed their bill praying to be reimbursed by a sale of the mortgaged premises under a decree of foreclosure; *held*, that they were purchasers in their own right, and must rely upon the use of the premises, during the term, for their reimbursement.

A tax laid upon real estate in the city of New York, for the purpose of opening or improving a street, &c., takes preference of a prior mortgage.

APPEAL from the Court of Chancery. The respondents are the executors of Hugh Williamson, deceased, who was the assignee of a mortgage given by Robert Fulton to one Bonsall, in June, 1814, upon certain lots in the city of New York. Pending the proceedings which had been instituted in the Court of Chancery, for the purpose of foreclosing the mortgage, the corporation of the city of New York, under the authority vested in them, for the purpose of opening and laying out streets, (2 R. L. 408, 409, &c.,) imposed upon the mortgaged premises an assessment of $1485 92, which not having been paid by the representatives of Fulton, the corporation proceeded to collect, agreeably to the provisions of the 259th section of the act in relation to the city of New York, (2 R. L. 442.) By that section the corporation are authorized, in cases in which the owners of lots, upon which assessments have been made, refuse or neglect to pay the assessment, after proper notice and demand, " to advertise the lots, and sell them at public auction, for the lowest term of years at which any person or persons shall offer to take the same, in consideration of advancing the sum assessed upon them, together with interest and all costs and charges which have accrued thereon. And the purchaser is authorized to enter upon and enjoy the premises until his term therein shall be fully complete and ended." The respondents became the purchasers of the premises in question, at the auction, for the term of one year. They took a lease from the corporation for the year. The original bill of foreclosure was filed by Williamson, and proceeded to a final decree. Williamson then died, and the above sale having been made to the respondents, his executors, they filed their bill of supplement and revivor, claiming a right to retain the amount thus paid by them, in addition to their mortgage debt, out of

ALBANY,
Sept. 1823.

Dale
v.
M'Evers.

the proceeds of the mortgaged premises, on the ground that if they had not become the purchasers at auction, the premises would have been sold for a long term of years, during which time the right to sell the mortgaged premises would have been suspended—that the purchase by them being compulsory, they ought to be reimbursed the amount this paid. The appellants, (the defendants below,) admitted in their answer, that an assessment of $1400, was imposed by the corporation upon the mortgaged premises—that they were put up at auction for the payment of this assessment; and that the terms of the sale were, that the person who would pay the assessment for the use of the premises during the shortest term, was to be considered the highest bidder— that the respondents became the purchasers at such sale, being the highest bidders; having agreed to pay the assessment for the use, rents and profits of the premises, for one year. They expressly denied that the respondents were compelled to purchase the premises to prevent them from being sold for a great number of years; and alleged that if the respondents had not become the purchasers, they would have been sold upon the offer of the next highest bidder, for only one year more, at all events; and, perhaps, for but a few months beyond the term of one year. They denied that they ever authorized the respondents to make the purchase on the account, or for the benefit of the appellants.

No replication was filed, and the cause was heard upon bill and answer, without proof.

The Chancellor decreed, that the payment by the respondents was compulsory, and formed a just and equitable charge, for which they ought to be reimbursed and indemnified out of the proceeds of the sale of the mortgaged premises; and that they be reimbursed, &c., accordingly.

The appeal was from this decree.

*S. A. Foot*, for the appellants. There was no legal necessity for the respondents to make the purchase. But suppose they were obliged to purchase in order to save themselves, they have no right to be reimbursed by the sale. This is not the ordinary case of a senior lien, which affects

the whole title or interest in the property. Had it been so, perhaps the decree would have been correct. It is not necessary for us to deny, that at a sale under a lien which affects the whole interest, the junior mortgagee may purchase, and be entitled to reimbursement out of the fund to be created on a sale upon his own lien. He would have the legal estate; and, as in other cases, might follow the fund arising from the last sale.

But here, only a small part of the title is affected. What is the thing sold? Merely the use of the property for a given time. The law knows no value of property, except what it will fetch in the market, and it was worth no more to Fulton's representatives. The respondents gave the market value, and had the appellants purchased, they must have done the same. It was of no consequence where the property went for this short period. It could have been no more than the use for a few years, leaving junior liens to their full effect after the time expired.

The answers positively deny the necessity of this purchase, and not being met by a replication, they must be taken as true. They say that the term in these lots was put up at auction, and sold at its fair value; and that if the respondents had not purchased, it would have been sold for but little more than the year. It would, at most, have extended to no more than two years.

Again: the respondents are purchasers. They took a lease of the corporation, and we must presume they went into possession under it. On the fund coming in they asked, and were allowed by the decree, to rescind their contract, after having had the use of the property, for which they are not even required to account, at any rate. *Cowell* v. *Simpson*,(a) shows how liens are waived or removed. The Court are also referred to *Gilman* v. *Brown et al.*,(b) on the same subject, and Law of Lien, ed. 1822, App. 218, &c. The case of *Codwise & others* v. *Gelston*,(c) exhibits the principle on which a fund may be followed into the Court of Chancery. It rests upon the ground of a lien at law, which the party may enforce at the time of the sale; and it appears to me that he ought, if he purchases, to be confined

(a) 16 Ves. 275.
(b) 1 Mason's Rep. 212 to 219.
(c) 10 John. 507.

to what he acquires by the sale. The lien is gone by the purchase, and he cannot follow the fund. The right to follow is in virtue of the lien, and is destroyed with it. It is an acknowledged rule, that where the conduct of the party is such as to show that he does not mean to retain and rely upon his lien, it cannot be enforced. The respondents should have bought in the lien created by the assessment, or they might have paid directly, and a Court of Equity would have allowed them to stand in the place of the creditor. One of these is the course, as dictated by the authorities; but the respondents have not chosen to take them as a guide. Is it not plain, then, that they intended to look to some source of remuneration other than the fund to be created by the sale?

*J. O. Hoffman,* for the respondents. It is easy to draw nice distinctions of law; but principles must always more or less depend upon the particular circumstances of each case. The first sale under the decree of the Court below was set aside on the ground of surprise, (3 John. Ch. Rep 290,) and it appears by the case that very great indulgence has been given to the appellants, as to time, in raising the money.

The parties stand in the relation of mortgagee and mortgagor. The former can never hold a term upon the mortgaged premises, as an incumbrance. It would merge on becoming united with his estate as mortgagee.

The mortgagee is entitled to be reimbursed, in this case, upon the same principle that would entitle him to a compensation for improvements upon the mortgaged premises. Here the respondents have, by their purchase, bettered the estate, in raising an incumbrance which would, at least, have materially reduced its value. The statute (2 R. L. 491, s. 37) makes the assessment a lien overreaching all other incumbrances, though prior in point of date. A mortgagee pays the ordinary taxes upon land: Would he not have a right to be reimbursed? The 38th section (2 R. L. 38) gives a remedy by action, where money is paid by one, which should, by law, have been paid by another. The

mortgagor, in this instance, ought to have paid and kept the security good. Not having done so, payment by the mortgagee became necessary, in order to save the security. For whose use was the payment made ? That of the mortgagor. That the incumbrance does not go to the whole fee, makes no difference. The object was to save the lien. If the mortgagee had stood silently by, the premises might have gone for 21 years ; which would have been a virtual defeat of his claim. It is said, he might buy or sell subject to such a lease—that the incumbrance did not go to the whole fee ; but the premises might be worth nothing, subject to such an incumbrance. The remedy suggested would put everything to hazard. A lease for but few years, such as the answer supposes might have been the result of our silence, would have destroyed our present lien, and increased the risk of loss. .

We did not, as supposed, purchase in our own right. We had no power to do this : the lease was not ours, but enured to the benefit of the mortgagor, who was bound both in justice and honor to pay it. Form should give way to substance. If there was, as the Chancellor declared, a legal necessity for securing this incumbrance in the hands of the mortgagee, it is not material, whether it was by assignment from the corporation, or payment or purchase of the term.

*Foot,* in reply. The case is considered mere form, but it was matter of substance to the appellants. If of no importance, it was easy to stop at the bid, and never obtain the lease. That one who pays an assessment, which is justly due from another, may recover it by action, is an argument against the remedy in equity. The respondents should have paid the money, and resorted to their direct legal remedy ; or, perhaps, they might then have filed their bill for relief. A year, or even six months possession of the property, might have been worth the tax, and we should have had the benefit of it, had the lease been out of the way. But the respondents bought, and by their own acknowledgment, acquired the full value of their purchase,

ALBANY,
Sept. 1823.

Dale
v.
M'Evers.

and we complain that they, notwithstanding, charge us with the consideration which they paid. The case in Johnson's Reports has nothing to do with the question here. Nor can there be a merger when it appears plainly by the conduct of the respondents, that they intended to keep the legal and equitable estates separate from each other. It is a singular doctrine, that a legal term is merged by its union with a mere security, as the right of the mortgagee is always holden to be in equity  It is but a chose in action.

Answer must be taken as true.

WOODWORTH, J. gave his opinion nearly as follows:— This cause having been heard in the Court below, upon the pleadings, the defence set up in the answer must be taken as true; and the only question is, whether the respondents are to be reimbursed what they paid, as bidders and purchasers at the auction.

Tax equivalent to a senior mortgage or judgment.

The corporation had a right to impose this tax, and when laid, it became a *lien* on the lots, overreaching the mortgage of the respondents. (2 R. L. 420, s. 186. Id. 442, s. 259.)  It was, as to them, equivalent to a senior mortgage or judgment; and the assessment not being paid after proper demand and notice, the corporation had a right to sell the lots for such a term of years as the purchaser at auction should consider worth the amount of the tax. They did so sell; the respondents bid this amount for a term of one year, and became purchasers of the mortgaged premises for that time, taking a lease of the corporation.

It is now urged that the respondents have not brought themselves within the rule which allows a junior incumbrancer to pay off a senior incumbrance and tack it to his own; that they are not to be regarded as having extinguished this incumbrance by payment, but by a purchase under it for their own benefit.

Effect of the purchase.

I think the objection is well taken: The respondents must be considered as having agreed to pay the tax for the privilege of holding a year. Their purchase is an admission that the term was worth the sum paid by them. This purchase turns out in evidence not to have been a very dear

one ; for the answer asserts (and it must be taken as proof) that had it been left to the bidder next below the respondents, the term would have been extended but for a few months, or at most, one year. Now, can the Court make a new contract for these parties ? Shall we say to them, " you were of necessity bound to make this purchase, and we will indemnify you, by reimbursing the sum paid, without taking into account the value of the term which you have purchased and enjoyed ?" The respondents have taken the remedy into their own hands. They have purchased, and (as we are to intend) have had the use of the land for a year at their own price ; and yet the decree in the Court below allows them the whole sum paid, without abatement. It gives them both the term, and the money which they have paid for it.

The Chancellor puts this on the ground of necessity. I do not see it in this light. I admit there was a necessity of paying off the incumbrance, but not of purchasing under it. On *paying* the assessment, the respondents might have come into the Court of Chancery, and said, " We have been under a legal necessity of paying a senior incumbrancer, in order to save ourselves. Now, upon the equitable principle of substitution, we claim to stand in the place of the corporation, and be refunded from the proceeds of the sale under our decree." There are several cases decided by the Chancellor, which would have sanctioned such a claim. It is recognized in the case of *The Silver Lake Bank* v. *North*, (4 John. Ch. Rep. 370.) There is a provision in the act under which this assessment was made, which would seem to sanction such a course. The 175th section declares, (2 R. L. 408,) " That if any money so to be assessed, be paid by any person, when, by agreement or by law, the same ought to have been borne and paid by some other person, it shall then be lawful for the person paying, to sue for, and recover the money so paid, with interest and costs, as so much money paid for the use of the person, who ought to have paid the same." In this case, the respondents need not have gone to their action. The law would not do so

ALBANY,
Sept. 1823.

Dale
v.
M'Evers

It was not required by legal necessity, though payment might have been.

Dale
v.
M'Evers.

idle an act as to turn them round to such a remedy. All parties were before the Court of Chancery upon a matter cognizable there, and the whole would have been a very proper subject of adjustment in that Court.

But the respondents have not chosen to take this remedy. They have suffered the property to be sold : they have themselves purchased and possessed it under the act, and they must abide the bargain which they have made.

Suppose the appellants had filed a cross bill against the respondents, praying an account of the rents and profits during the year. The plain answer would have been : "We are the purchasers of this property, and hold it by a lease from the corporation, for which we have paid an equivalent ; and we are not bound to account. The whole subject has been before the Chancellor, and is disposed of." This would be a conclusive answer.

In granting the prayer of the respondent's bill, we take from the appellants all the benefit of competition at the sale. If the respondents had not purchased, this assessment would have been paid by some other bidder, for a term of two years, at most, according to the answer. Thus the corporation would have been paid : the respondents could not have been materially injured ; and the whole sum would have been saved to the appellants.

I am clear for reversing the decree.

Answer conclusive.

SUTHERLAND, J. No replication having been put in to the answer, it is to be considered as true throughout, upon the plain and obvious principle that the respondents, by not filing a replication, and thereby putting the facts contained in the answer in issue, have deprived the appellants of the opportunity to prove them.

Effect of its being considered so in this case.

It is, then, to be taken as an admitted fact in the case, that if the respondents had not become the purchasers at the auction, some other person would have paid the assessment for the use of the premises during two years. This fact is positively asserted in the answer. The annual value of the premises, therefore, is proved to have been between 7 and 800 dollars, at least. In this view of the case admitting the

purchase by the respondents to have been compulsory, and that it was necessary for the preservation of their right, under their mortgage, it would seem to be manifest that they could have no equitable claim upon the appellants for any thing more than the difference between the sum paid by them for the lease for a year, and the actual value of the premises for that term. They purchased for the sole purpose of guarding their rights as mortgagees. They went into possession under that purchase in judgment of law; and there is nothing in the case to show that they did not in fact. They were then mortgagees in possession with an equitable claim, or lien, for the amount which they had been compelled to pay in order to obtain the possession, but unquestionably liable to account for the rents and profits of the mortgaged premises. Under the pleadings and proofs in this case, can the respondents be permitted to say, that the use of the premises for a year was not worth the full amount paid by them? There is no such allegation in their bill. They merely say, "that to prevent a sale of the premises for a long term of years, they were compelled to pay the amount of the assessment, and take a lease of them for a year." Not an allegation or intimation any where in the bill, as to their annual value. The answer states the mode and circumstances of the sale—that it was at public auction—that there were other bidders who would have paid the assessment, for the use of the premises for a few months longer than they were bid off for by the respondents.

I think the respondents, under the circumstances of this case, are concluded from saying that the use of the premises for a year was not worth the amount paid by them.

But it was not necessary for the respondents to pay the assessment, in order to protect their rights as mortgagees. A sale under the assessment did not affect the title to the premises. It gave to the purchaser only a right to the temporary use and enjoyment of them. The mortgagees had still a right to foreclose their mortgage, and to sell the mortgaged premises, subject to the right acquired under the assessment. If the law had directed the assessment to be collected by an absolute sale of the premises, instead of a lease for a term

ALBANY,
Sept. 1823.

Dale
v.
M'Evers.

of years, the case would have been very different. Then the title would have passed under the sale, and unless the mortgagees became the purchasers, the lien of their mortgage would have been gone. That would have been clearly a compulsory purchase.

Under the circumstances of this case, I cannot but consider the purchase as voluntary, and that the respondents have no equitable claim to be reimbursed the amount of the assessment, thus paid by them, out of the proceeds of the sale of the mortgaged premises. I am accordingly of opinion, that so much of the decree of the Chancellor as directs such reimbursement, should be reversed.

SAVAGE, Ch. J. concurred in the result of these opinions.

For reversing, in part, 20.
For affirming, 5.

A majority of the Court being of this opinion, the following order was entered :

This cause having been argued by counsel, and due consideration had thereon ; and it appearing to this Court that the payment of the amount of the assessment upon the mortgaged premises, as stated in the pleadings, and made by the respondents, was not made by necessity, to deliver the mortgaged premises from incumbrance, and for the benefit of all the parties concerned therein; but, on the contrary, that the amount of the said assessment was paid, in pursuance of a purchase at auction of a term in said premises, by reason whereof the payment of the said assessment does not form a just and equitable charge, to be reimbursed out of the proceeds of the sale of the mortgaged premises :

Thereupon, it is ORDERED, ADJUDGED and DECREED, that so much of the decree of his Honor the Chancellor, as directs any money to be paid out of the proceeds of the sale of the mortgaged premises, for the satisfaction and reimbursement of the amount of the said assessment, be reversed ; and that the decree, in other respects, be affirmed ; and that the proceedings be remitted, &c.