Ruggles, J.
 

 Van Buskirk, the collector, who was the defendant in the justice’s court, was bound to prove on the trial, for the purpose of justifying himself in levying on and selling the property in question, that he acted under a lawful warrant issued by persons clothed with competent authority for that purpose. He produced a warrant under the hands and seals of the twelve supervisors of the county, but the name of their office was not annexed to their signatures, or otherwise expressed in . direct terms on the face of the warrant. It appeared, however, on its face, to be for the collection of the taxes against the inhabitants of the town, and was annexed to a tax list or assessment roll, containing the names of the persons taxed, and the amount of the tax upon each. The warrant was in point of form substantially in pursuance of the statute, and was made by persons actually having lawful authority to make and issue it.
 

 It is said, however, that it did not appear on its face to be the official act of the board of supervisors. In this I think the plaintiff’s counsel is mistaken. The persons composing the board of supervisors all joined in executing the warrant, for a public purpose expressed on its face, and in pursuance of a public duty
 
 *476
 
 enjoined on the supervisors by law. The supervisors are public and sworn officers, chosen by the people of the several towns by public election. They hold public meetings for the transaction of the county business, and, among other things, for the laying of taxes necessary for the support of the government of the towns, counties, and state. Every man in the county over which their authority extends must be presumed to know the persons by whom these offices are filled ; and although it might have been more strictly proper that the official character of the act should have been expressly stated, it appears, in my- opinion, sufficiently from the public purpose and object of the warrant; and from the fact, known or presumed to be known to the tax payers and to the collector, that those who united in its execution were public and sworn officers having power to do the act A. sheriff may lawfully make an arrest without showing the writ on which the arrest is made, but a special deputy must exhibit his authority if required. This is on the presumption that within his own county the sheriff is a known public officer; and the presumption applies to the supervisors as perfectly as to the sheriff. This is not a case in which the plaintiff below could have had any doubt with respect to the nature and character of the warrant, or of the authority on which it issued. The warrant, therefore, was well enough in its form and execution, and it was not necessary, for the purpose of supplying any defect in the instrument, to introduce parol proof that the persons who signed it were actually the supervisors.
 

 But if the warrant should be regarded as defective in this respect, the defect, it would seem, may be supplied by parol evidence. It was so done in a case where a judgment record was signed by a judge who did not describe himself as such.
 
 (Elliott
 
 v.
 
 Cronk’s adm.
 
 13
 
 Wend.
 
 35.) And where the certificate of the acknowledgment of a deed was made by an officer who did not describe himself as such, it was held that the fact of his being such officer might be supplied by other evidence.
 
 (Rhoads
 
 v.
 
 Selin,
 
 4
 
 Wash. 718.)
 

 But if the warrant had on its face been expressly stated to be the official act of the board of supervisors, it would nevertheless have been necessary for the collector to prove its execution,
 
 *477
 
 and evidence for that purpose was properly received by the justice.
 

 Another point made by the plaintiff is, that the collector should have produced not only the warrant but the adjudication, or proceedings of the supervisors in the nature of an adjudication, by which the tax was laid, the collector having sold the goods of John Sheldon to satisfy the tax against Thomas Sheldon. There are several answers to this objection. First. The assessment roll and tax list annexed to the warrant, (which although not printed in the case, is understood to have been produced at the trial,) is the only proceeding in the nature of an adjudication by the supervisors. Of the corrected assessment roll a fair copy is made.- One is delivered to the town clerk, and the other to the collector to be annexed to his warrant. The copy is for all purposes a duplicate original, and is evidence of the levying of the tax. This is all that was necessary ; and it was necessary only because the assessment roll or tax list was annexed to and part of the collector’s warrant. Ever since the case of
 
 Savacool
 
 v.
 
 Boughton,
 
 (5
 
 Wend.
 
 170,) a ministerial officer is protected in the execution of process regular on its face, and coming from a court or body of men having jurisdiction of the subject matter. Where an officer who has seized property by virtue of an execution, is sued by the defendant in the execution for taking the property, the officer is never compelled to produce the judgment to justify the taking. The execution alone protects him. But if the officer is sued by A. for taking his property under color of an execution against B., the question to be tried is whether the property when taken belonged to A. or to B. If it belonged to A., the execution, with or without the judgment, is no protection, for it does not command the officer to take A’s property. But if A. claims title to the property by virtue of a sale from B. to him, which is alleged to be fraudulent against B’s judgment creditors, then it becomes necessary for the officer to produce the judgment on which the execution issued against B.; but this is for the purpose of proving, in connection with other testimdhy, that the pretended sale from B. to A. was fraudulent and void, and that the property therefore still belongs to B. and not to A. The
 
 *478
 
 judgment in such case is given in evidence, because it affects the title to the property in question, and not because it is for any other purpose necessary to protect the officer.
 

 In the present case nothing is necessary for the protection of the officer except the warrant. John Sheldon does not claim title to the property in question from Thomas; and if he did it would make no difference. The collector is authorized by the statute (1
 
 R.
 
 S. 387, § 2,) to sell not only the goods and chattels of the party taxed, “ but any goods and chattels in his possession, and no claim of property made by any other person shall be available to prevent a sale.” The jury found by their verdict that the property sold by the collector either belonged to or was in the possession of Thomas Sheldon. The defendant therefore had the right to sell.
 

 The remaining question is whether the defendant had authority to sell on the second of February, the day after that on which by the warrant he was directed to pay over the money collected.
 

 Although the warrant requires all payments therein specified to be made by the collector on or before the first day of February, the statute enlarges the time. (1
 
 R. S.
 
 398, § 6.) “ Every collector shall within one week after the time mentioned in his warrant, for paying the moneys directed to be paid to the town officers of his town, and to the county treasurer, pay to such town officers and county treasurer the sums in such warrant to be paid to them respectively,” &c. The warrant in the meantime remains in the collector’s hands. The sale is not expressly required, either by the warrant or the statute, to be made before the first day of February, and from this section of the statute it is evident that his duty is fully discharged by making the payment within a week after that day. The levy having been made before the first of February, I think the sale was lawful although made after that day. A constable may not sell under an execution in his hands after the return day because he is expressly prohibited by statute. (1
 
 R. S.
 
 253, § 161.) There is no such prohibition in the case of a collector’s warrant. Although he is required by the terms of the warrant to pay the money by the first of February, the
 
 *479
 
 power to sell does not cease by reason of his omission to obey the direction, any more than in the case of an execution issued out of the supreme court. The clause in the statute which directs the warrant to require all payments to be made on or before the first of February, although peremptory so far as relates to the form of the warrant, is certainly not so with respect to the time when the collector is to pay over; because his duty in that respect is regulated by the section above quoted which’ extends the time. Admitting that the power to sell ceased when the collector was bound to pay over, it did not cease until the 8th of February.
 

 The judgment of the supreme court must therefore be affirmed, with the costs of the appeal to be paid by the appellant.
 

 Judgment affirmed.