## CORNELIUS VAN DUYNE

*v.*

## MATTIE C. SHANN et al.

A mortgage of $1,000 was foreclosed, but through the mistake of the complainant's solicitor a subsequent judgment creditor was not made a party. By an agreement between the owner of the equity of redemption (which was subject to the charge of a life estate and legacies amounting to $1,750, all of which were paramount to the judgment) and the mortgagee, the latter purchased the premises at the foreclosure sale and transferred his bid to the owner of the equity of redemption, and at the same time advanced to him another $1,000, for which he received a mortgage of $2,000, including his old mortgage, on the same premises. The owner of the life estate and the legatees released their respective interests in the premises, taking therefor mortgages subsequent to complainant's $2,000 mortgage. The additional $1,000 was expended in paying off the principal and interest of encumbrances prior to the $1,000 mortgage, and taxes on the premises then due.—*Held*, that the judgment did not, through the solicitor's mistake in omitting it from the foreclosure, become a lien on the premises prior to the $1,000, but the latter must still be treated as an existing encumbrance, and the complainant entitled to an account of the moneys due to him thereon, and of all moneys paid by him or any subsequent grantee for taxes and necessary repairs on the premises, as well as for the liquidation of any encumbrances thereon prior in lien to the judgment; and, on the other hand, complainant must account for all rents and profits received by his grantee or those claiming under him since the delivery of the sheriff's deed under the foreclosure of the $1,000 mortgage.

---

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. G. O. Vanderbilt* and *Mr. J. H. Stewart,* for complainant.

*Messrs. J. W. & J. K. Field,* for George Ward.

THE CHANCELLOR.

This suit is brought to foreclose a mortgage given by John Fenning and wife, June 13th, 1856, to Anthony Simmons, on a lot of land (with a house upon it) in Princeton for $500 and interest, now held by the complainant, and a mortgage given to the complainant by Charles J. Fenning and wife, April 7th, 1871, on the same premises, to secure the payment of $2,000, besides interest. The lot is of the dimensions of sixty feet front and rear, by one hundred and twenty in depth, but by mistake is described in the first-mentioned mortgage as being one hundred and ninety feet deep. The bill prays that the description in that mortgage may be rectified in that respect. It appears that John Fenning, who continued to own the property after the complainant's first mortgage was given, up to the time of his death, gave, August 1st, 1865, another mortgage upon it to Abraham Johnson for $500 and interest, which mortgage was assigned on December 3d, 1872, to Robert D. Warren. John Fenning died December 31st, 1866. By his will he devised all his real property to his wife for life, with remainder in fee to his son John A., and charged it with legacies amounting to $1,750, to his children James, Frederick, George, Teresa and Mary, payable at the death of his wife or within a year thereafter. On May 26th, 1868, John A. Fenning, the son, gave a mortgage on the lot to the complainant for $1,000 and interest. On the same day James Palmer & Sons recovered a judgment against him in Mercer circuit court for $250; August 22d, 1868, Imlah and Charles Moore recovered a judgment against him and John Cruser in the supreme court of this state for $813.12; November 4th, 1868, Josiah H. Cain and George Ward (J. H. Cain & Co.) recovered a judgment (now owned by Ward, who has survived Cain) against him in the last-mentioned court for $669.99; December 2d, 1868, Theodore F. Johnson & Co. recovered a judgment against him and Benjamin R. Thomas (surety) in the Mercer circuit court for $504; October 9th, 1869, John A. Fenning and wife conveyed the mortgaged premises to his brother, Charles J. Fenning, subject to the legacies charged thereon and subject to their mother's life estate; December 8th,

1869 (after he had parted with the property), he, John, gave a mortgage on the same premises to John Cruser for $1,000.

The complainant, March 10th, 1870, filed his bill in this court to foreclose his $1000 mortgage. He made John Cruser (as mortgagee), Charles J. Fenning and Benjamin R. Thomas, as judgment creditor (he was then the holder of the before-mentioned judgment recovered by Theodore F. Johnson & Co. against John A. Fenning and himself), defendants. The judgments in favor of James Palmer & Sons and Imlah and Charles Moore had been paid. Those persons, therefore, were not made defendants. The judgment in favor of Cain and Ward was not paid. The plaintiffs therein were not made parties merely because the solicitor by whom the bill was drawn and the proceedings conducted, was not aware of the existence of the judgment. He relied on a statement made by John A. Fenning as to what judgments were liens on the property, and in that statement that judgment was not mentioned. There were a final decree and execution for the sale of the mortgaged premises in the case, and under them the property was sold March 31st, 1871, to raise for the complainant $1,183.75; for Thomas $256.41, and for Cruser $1,146.42.

At the sale under the execution, the property was struck off to the complainant for $100, but the deed, which was given April 7th, 1871, was made to Charles J. Fenning, by direction of the complainant. This appears to have been done in pursuance of an arrangement between the complainant and Charles J. Fenning, by which the former agreed to let the latter take the title to the land and to lend him $2,000 on mortgage thereof, provided he would get a release of the life estate of his mother in the property and a postponement of the legacies charged on the land to the lien of mortgage, and would apply the $2,000 to the payment of the sheriff's fees on the execution, the taxed costs of suit, the interest due on the complainant's $1,000 mortgage, and the payment of a mortgage on the property, given prior to any of those above mentioned, in 1840, by John J. Fenning (the above-mentioned John Fenning) to David Hullfish, for $200, and interest, and assigned to Job Olden, and the interest due on

Van Duyne v. Shann.

the complainant's first mortgage, called the Johnson mortgage, and the interest due on the mortgage held by Duryee, and also the taxes which were in arrear on the premises. The arrangement is stated in a memorandum made, after the sheriff's sale and on the same day, by the complainant's solicitor in the foreclosure suit, as follows:

"Van Duyne is to take a new mortgage on the whole property, for his claim, decree, with interest and costs, and as much more as will make $2,000, to follow the two mortgages of Duryee and Johnson; amount, together, $1,000. The interest on said mortgages and Job Olden's mortgage, for principal and interest and taxes, are to be paid out of the surplus of said $2,000, after Van Duyne's claim shall be satisfied, and the widow and legatees of John Fenning, deceased, are to execute releases of their interest in said property; deed from sheriff to be made to Van Duyne or to whom he may direct."

The arrangement was carried out strictly. The widow and legatees released their claims to and upon the property, and the $2,000 mortgage was given, and the money advanced on it, according to the agreement. The widow took, for her life estate, a subsequent mortgage on the property, to secure an annuity to her, and the legatees took, in consideration of their release, a trust mortgage, also subsequent to the $2,000 mortgage. Charles J. Fenning paid on the Johnson mortgage, $175; on the Duryee mortgage, $100, and on the Olden mortgage (in full), $224; and he paid about $200 of taxes. The complainant retained, out of the $2,000, the principal and the interest ($202.76) due on his $1,000 mortgage, and the costs of the foreclosure and interest thereon ($71.03), and the sheriff's execution fees ($26.83). These sums, altogether, amount to $1,999.62. George Ward, owner, as before mentioned, of the judgment recovered by J. H. Cain & Co., insists that that judgment is a lien on the property next after the Johnson and Duryee mortgages. The complainant, on the other hand, claims priority for both of his mortgages, over the judgment. The bill states that the $1,000 mortgage held by the complainant was never canceled of record. All the money lent on the $2,000 mortgage was, with the exception of what was paid for costs and execution fees, used—and it was lent on condition that it should be so used—in the payment or reduction of the amount of liens upon the

mortgaged premises, which were prior to the judgment. That money was lent on the security of that mortgage, in good faith, and in the conviction, on the part of the complainant and of the borrower, also, that, after the foreclosure sale, there was no claim upon the property except the Olden, Johnson and Duryee mortgages, the life estate of the widow, the charges of the legacies and the taxes. The inducement to the complainant to lend the money on the security of the mortgage, was the release of the life estate and the postponement of the charge of the legacies to the lien of the mortgage, and the payment of the interest on the Johnson and Duryee mortgages, and the payment of the Olden mortgage, with the taxes and the costs of the foreclosure and the execution fees. The foreclosure proceedings were *bona fide.* The object, indeed, was to bring the property to a public sale under them, for the payment of the encumbrances upon it subsequent to and including the complainant's $1,000 mortgage, in order that it might be cleared of them. That was a legitimate purpose, and it was carried out fairly. The sale, of course, did not and could not affect J. H. Cain & Co.'s judgment. The omission to make anyone a party in respect to it was, as before stated, not from design, but by mere oversight of the complainant's solicitor. The sale was an open and public one, conducted fairly and according to law, and in the usual way. The property, clearly, was not worth the amount of the encumbrances upon it prior to the Ward judgment. It sold, in fact, for $100, subject to the encumbrances prior to the complainant's $1,000 mortgage. The foreclosure was complete as to all encumbrances subsequent to and including that $1,000 mortgage, except J. H. Cain & Co. In the conviction that the title acquired under it was complete against all those subsequent encumbrances, the complainant advanced $2,000 on mortgage of the property, on condition that the life estate should be extinguished, the charge of the legacies postponed to that mortgage, and the money, over and above what was due on his $1,000 mortgage, with costs of suit and execution fees, paid in discharge or reduction of prior encumbrances. And that condition was, as before stated, in all respects fully performed. The question is whether, under the

circumstances, Ward should have the benefit of that release and postponement and payment of paramount encumbrances. It is too obvious for remark that it would be contrary to the dictates of justice to give him that advantage, and it would be surprising to find that any rule of equity (using the term in its technical sense) would prevent this court from doing between the parties what justice demands, and constrain it to do injustice. Were this a suit to compel Ward to redeem, he would, under the circumstances, be required to pay the amount of all encumbrances prior to his, to pay which the property was sold. That is, he would be required to pay the complainant's $1,000 mortgage and interest, but not the costs of suit, or of the execution. *Parker* v. *Child, 10 C. E. Gr. 41; Benedict* v. *Gilman, 4 Paige 58; Jones on Mort.* § *1075; McCormick* v. *Knox, 105 U. S. 122; Chilver* v. *Weston, 12 C. E. Gr. 435.* Also all moneys which the purchaser had paid in reduction or discharge of prior encumbrances. *McCormick* v. *Knox, ubi sup.* Or for interest thereon. Or for taxes or municipal assessments. *Atwater* v. *West, 1 Stew. Eq. 361; Dale* v. *McEvers, 2 Cow. 118; McCormick* v. *Knox, ubi sup.* In *Benedict* v. *Gilman,* above cited, Chancellor Walworth held that a judgment creditor, in order to redeem property sold under a statute foreclosure, must pay for valuable permanent improvements put by the purchaser on the premises, under the belief that he had acquired a good title and in ignorance of the existence of the judgment. "It is charged in the bill in this case," he says, "and admitted by the answer, that at the time of the statute foreclosure the whole value of the premises did not exceed the amount due on the mortgages and costs of the proceedings, and that the complainant was ignorant of the existence of these judgments [which were liens on the land] until after he had made permanent improvements upon the premises to a considerable extent. Under such circumstances it would be inequitable and unjust to give the defendants [the judgment creditors] the benefit of those improvements without compelling them to pay an equivalent therefor. The case would have been different if the complainant had made the improvements with a full knowledge of the defendants' equitable right to redeem."

He would have to pay for necessary repairs. *Godfrey* v. *Watson*, *3 Atk. 517 ; Vanderkemp* v. *Shelton, 11 Paige 28.* On the other hand, he would be entitled to an account of the rents and profits, and to have them applied to the payment of those moneys.

It must be stated, to complete the history of the title, that the property was conveyed by Charles J. Fenning and his wife to John F. Shann, January 8th, 1872, and Shann and his wife conveyed it to Margaret Wyckoff, April 17th, 1872, and she and her husband conveyed it to Mrs. Shann, June 5th, 1872, and she now owns it. Shann and his wife mortgaged the property March 19th, 1872, to Henry D. Johnson, for $500 and interest. Johnson assigned the mortgage to Henry B. Duryee. Shann and his wife, in April, 1872, mortgaged the property to Henry B. Duryee for $200 and interest.

The complainant is entitled to an account of the moneys due him for principal and interest on his $1,000 mortgage, which is to be treated as an existing encumbrance, and of all moneys paid for taxes, whether paid by him or Charles J. Fenning or his grantees, and for all necessary repairs put on the property by Fenning or his grantees, and of all principal and interest paid by Fenning or his grantees on the prior encumbrances since the sale. On the other hand, he is to account for all rents and profits received by Charles J. Fenning or his grantees since the delivery of the sheriff's deed to the former. Should the accounting result in a balance against him it must be credited on his first mortgage. If in his favor he is to have a decree for the amount of the balance prior to the Ward judgment claim. He is entitled to his costs of this suit.

He is not entitled to subrogation to the rights of the legatees under the will of John Fenning. He has not paid their claim nor any part of it. They agreed with him that if he would lend the $2,000 to Charles J. Fenning on mortgage of the property, they would postpone their claim to the mortgage. And so, too, of the widow's life estate. She on like consideration agreed to release it and take a subsequent mortgage for an annuity instead of it. The complainant is entitled to no exemption from accounting for the rents and profits by reason or

in consideration of those matters. The claims of the trustee under the mortgage given to secure the legacies, to priority over the Ward judgment, cannot be allowed. The legatees must be regarded as having voluntarily relinquished their preference.

The error in the complainant's first mortgage will be corrected. The depth of the lot is only one hundred and twenty feet, and not one hundred and ninety as stated in that instrument.