Dickman, J.
The plaintiff in error is the owner of certain premises in the city of Cincinnati, which are occupied by a tenant engaged in the business of trafficking in intoxicating liquors. By virtue of section one of the act passed May 14,1886, “ providing against the evils resulting from the traffic in intoxicating liquors,” and known as the Dow law, the tenant’s business was assessed in the sum of two hundred dollars, and such assessment, under section two of the act, is made a lien upon the owner’s premises. *579 The lieu thus created, it is alleged, has caused a cloud upon the owner’s title, to remove which the original action was instituted. The pleadings put in issue the validity of such lien, and give rise to the inquiry, as in State v. Frame, 39 Ohio St. 399, whether it contravenes section 19, article 1, of the constitution, which provides that “ private property shall ever be held inviolate, but subservient to the public welfare,” and also whether the assessment that is made a lien is in conflict with sectiou 2, article 12, of the constitution, and section 18 of the schedule to the constitution-of Ohio.
It is provided by the first and second sections of the act of May 14, as follows:
“ Section 1. That upon the business of trafficking in spirituous, vinous, malt, or any intoxicating liquors,' there shall be assessed, yearly, and shall be paid into the county treasury, as hereinafter provided, by every person, corporation or copartnership engaged therein, and for each place where such business is carried on by or for such person, corporation, or copartnership, the sum of two hundred dollars; provided, if such business continues through the year, to wit, from the fourth Monday of May, exclusively, in-the trafficking in malt or vinous liquors, or both, such assessment shall be but one hundred dollars.
Section 2. That said assessment, together with any increase thereof, as penalty thereon, shall attach and operate as a lien upon the real property on and in which such business is conducted, as of the fourth Monday of May each year, and shall be paid at the times provided for by law for the payment of taxes on real or personal property within this state, to wit, one-half on or before the twentieth day of June, and one-half on or before the twentieth day of December, of each year.”
It is presumed that the legislature, designed these sections to be prospective in their operation, so as not to impair existing rights. The settled rule is, that whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts. Newland *580 v. Marsh, 19 Ill. 384; Bigelow v. West Wisconsin R. Co., 27 Wis. 478. In determining whether the assessment in question would operate as a valid lien upon the owner’s premises, it is material to inquire as to the conditions under which the tenant is in possession. If the real property on or in which the business is conducted is held by the tenant under a lease for a term made prior to the passage of the 'statute, the provisions for a lien in the second section would not operate. It might well be considered an unauthorized interference with private property, and contrary to the legislative intent, to subject the freehold of a lessor for assessments against the business of a lessee, over which the lessor could exercise no control during the term granted under a pre-existing lease. State v. Frame, supra. But, in the case at bar, the occupant had no written lease, and occupied the premises only as a monthly tenant. After the passage of the statute, and before the commencement of the original action, his term had expired and he had become a tenant at sufferance. At common law, he had only a naked possession, and no estate which he could transfer or transmit, or which was capable of enlargement by release, nor was he entitled to notice to quit. He held by the laches of the landlord, who might enter and put an end to the tenancy when he pleased. 2 Black’s Com. 150; Co. Litt. 270b; Jackson v. Parkhurst, 5 John. 128; Jackson v. M’Leod, 12 John. 182. Holding over, as the tenant did, after the month of May, the plaintiff in error could have resorted, at her option, to the statutory remedy of forcible entry and detainer. She was not, therefore, in the position of a lessor, whose premises are placed beyond his control, by a lease executed before the passage of the statute, but she had it in her power to terminate the tenancy, and thus prevent the assessment from becoming a charge upon her property. If she elected to allow her tenant to hold over after his interest was determined, and to permit the relation of landlord and tenant to be renewed, and the premises were thereafter used by the tenant in the business of trafficking in intoxicating liquors, it would be presumed that she so *581 acted in full view of the statutory lign that would thereby be fastened upon the premises.
But it is contended that if it should be granted that the assessment upon the tenant’s business is not inhibited by the constitution, the lien created for the pupose of enforcing its payment is in violation of the constitution, and an unwarrantable invasion of private property, inasmuch as it is in effect subjecting the property of one man to discharge the obligations of another. Section 19, article 1, of the constitution is designed to guard the inviolability of private property subservieut to the public welfare. But, as said by Thurman, J., in Cass v. Dillon, 2 Ohio St. 624, that section has no reference to the taxing power; its object is rather to prescribe modes for and limitations upon the exercise of the power of eminent domain. It does not, therefore, embrace within its operation sections one and two of the statute under consideration, which may be referred to that branch of the sovereign power of the state denominated the taxing power. This power, it has been said, in its nature acknowledges no bouudary. It is inherent in sovereignty, and is coextensive with that of which it is an essential property. It is necessary to the existence of government, and being granted for the benefit of the whole people, none have any right to complain, if the power is fairly exercised, and the proceeds properly applied to discharge the obligations for which the taxes are imposed. Cooley on Taxation, 3; North Missouri R. Co. v. Maguire, 20 Wall. 46, 60. The principle is stated with great force by Chief Justice Marshall, in M’Culloch v. Maryland, 4 Wheat. 428: “The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation. The people of a state, therefore, give to their government the right of taxing themselves . . . and as the exigencies of government can not be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influ *582 euee of the constituents over their representative to guard them against its abuse.” The power of taxation, however, included in the legislative power vested in the general assembly by article 2, section 1, of the constitution, is indeed wisely regulated and limited by that instrument; but, we may well ask, what avails the power of taxation, if there is no commensurate power to collect taxes and assessments when imposed. It is not, therefore, we think, beyond the scope of the legislative authority of the state to enact that the payment of a tax on the business of the liquor traffic shall be secured by a lien on the premises upon which the business is carried on, if the owner of the premises after the passage of the law, leases and identifies them with the business, and makes them participant therein, and for the time being necessary to its continuance.
A statute of the state of Michigan provides that if any person shall neglect to pay the tax imposed upon him, the treasurer shall levy the same by distress and sale of any goods and chattels in the possession of such person, and no claim of property made thereto, by any other person, shall be available to prevent a sale. And when any property shall be legally distrained and sold for the tax of any person, and such property shall be owned by another person, such owner is authorized to recover of the person for whose tax the same was sold the value of such property in an action of assumpsit. In Sears v. Cottrell, 5 Mich. 251, it was insisted that this statute was on several grounds in violation of the constitution, and especially on the ground that the owner was deprived of his property “without due process of law.” Nut the words, “ due process of law,” it was said, meant the law of the land; and by “ the law of the land,” under the right of taxation, was to be understood laws that are general in their operation, and that affect the rights of all alike. The law in question was declared to be constitutional; and it was held to be of general operation, and not a special act of the legislature passed to affect the rights of an individual in a way in which the same rights of other persons were not affected. If it *583 should he said that the law might prove unnecessarily severe, and might' sometimes do injustice, without fault in the sufferer, it might well be replied, said the court, that such considerations might very properly be addressed to the legislature, but not to the judiciary; they go to the expediency of the law, and not to its constitutionality. Mr. Justice Christiancy, in a concurring opinion, considered at length the specific objection that the law was unconstitutional, in that it authorized the taking of one man’s property for the debt of another. But that particular provision of the law was pronounced to be not a new one as applied to the collection of taxes, and to be much older than the constitution. It has prevailed for a long period in the state of New York, and its constitutionality seems never to have been questioned in that state. See Sheldon v. Van Buskirk,, 2 N. Y. 473. The same principle holds in the state of Vermont, and where a constable has failed to make return, and pay over taxes, the sheriff, on an extent, if unable to fiud property of the constable, “ may ■levy and collect the same of any inhabitant of the township,” who is to have his action against the township for the amount.
But the general assembly, under section 18 of the schedule to the constitution, as one of the means of providing against the evils resulting from the traffic in intoxicating liquors,' has deemed it proper to assess the business of those engaged in such traffic, and to provide that the assessment shall operate as a lien upon the real property on and in which such business is conducted. Invoking the aid of the taxing power, if we regard these provisions of the statute as also an exercise of the police power of the state, there was, in our judgment, ample authority to create a lien on' the premises of the plaintiff’ in error for the payment of the assessment on the tenant’s business. If a tenant engages in a business which, by causing intemperance, pauperism, and crime, becomes a proper subject for the exertion of the police power of the state, the legislature may with propriety include the premises of the *584 lessor, which sustain and derive profit and advantage from the subject-matter upon which such power is exerted. “It is a settled principle,” says Chief Justice Shaw, “ growing out of the nature of well ordered’civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the- . . . rights of the community.” Commonwealth v. Alger, 7 Cush. 84. Eor over thirty years it has been the settled policy of this state to hold any building or premises, rented or leased to another, to be used or occupied, for the sale of intoxicating liquors, contrary to law, liable for all damages assessed against the lessee thereof, for violations of the laws regulating such traffic. S. & C. 1434. Such liability is continued in section 4364 of the Revised Statutes, and the premises may be sold to pay all fines, costs, and damages assessed against any person occupying the same. This, species of legislation, involving in liability both lessor and lessee for damages resulting from the business of the latter to third persons, has frequently come under judicial, examination, without its constitutionality being seriously called into question, and may find cumulative sanction in the well recognized police power granted to the general assembly in th e schorl ule to the constitution. Zink v. Grant, 25 Ohio St. 352; Justice v. Lowe, 26 Ohio St. 372; Bowers v. Pomeroy, 21 Ohio St. 184; Schultz v. The State, 32 Ohio St. 276.
The existence of the lien under consideration need not work to the detriment of the owner of real property. If he leases property adapted to the business contemplated in lie statute, he may stipulate with his lessee for an indemnity against any loss accruing to him from the statutory lien. He is presumed to take cognizance of the general laws of the state that are in force. And if, with eyes open, he provides a building or premises for another to conduct a business marked by the constitution and laws as a source of evil, and opposed to public policy, he should not be permitted to evade the operation of the *585 statute. If the alienation of the real estate becomes less feasible on account of the statutory lien, the owner who has executed a lease after the passage of the statute has himself invited the lien.
The able and learned opinion pronounced by Minshall, J., in Adler v. Whitbeck, ante, p. 539, renders it unnecessary to consider at any length fhe direct bearing of section 2, article 12, of the constitution, on the assessment upon the business of trafficking in intoxicating liquors, which is made to operate as a lien upon the real property. It is well understood that this section is not a grant of power, but a regulation or limitation rather, of the taxing power comprised in the general legislative power of the state vested in the general assembly. While, however, it furnishes the governing principle for taxes for general revenue, by providing that laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property, according to its true value in mouey, it does not cover the whole domain of taxation. In the taxation of property for general revenue, equality and uniformity must constitute the guiding rule, but it was not intended to so impair the ability of the legislature to promote the public good as to preclude it from all modes of raising money by taxation or assessment, not in strict conformity with the second section of the twelfth article. In raising general revenue to meet the necessities of government, certain designated kinds of property are required to be taxed by a certain rule; but, subject to the limitations contained in the constitution, the power to impose taxes readies to trade-* or occupations,in any of the modes known and practiced prior to the constitution of 1851. Cooley on Constitutional Limitations, * 479; Western Union Telegraph Co. v. Mayer, 28 Ohio St. 521.
Accordingly, the general assembly, while observing the required rule of uniformity in taxing the kinds of property designated, has frequently, by virtue of the general legislative power granted it by the constitution, exercised a *586 supervisory power over various branches of business, and imposed upon them assessments for exceptional and special purposes. Among other examples of this which might be adduced is the assessment upon the business of gas companies and manufacturers of mineral or petroleum oil. In The Cincinnati Gas L. & C. Co. v. The State, 18 Ohio St. 237, it was held that a pro rata assessment, according to valuation, on the property of the gas companies of the state, to pay the salary of the state inspector and other expenses of his office, was not in violation of the constitutional provision for taxing property according to a uniform rule. Acting upon this principle, the legislature has authorized the state inspector of oils to demand and receive from the owner or party for whom he performs the inspection a certain sum for every package or cask, and all fees so accruing are made a lien on the oil inspected. Indeed, a denial to the general assembly of the right to impose an assessment as prescribed in the Dow law would be inconsistent with the raising of moneys from licenses of any kind, inspection charges, or other kindred methods.
But, not only had the general assembly authority to make this assessment upon the liquor traffic, as being invested with all the legislative powers of the state, but by the schedule to the constitution it is permitted and in duty bound, we think, to use any or all of these powers, not expressly or by necessary implication prohibited, in providing against the evils resulting from such traffic. And if, in the exercise of its judgment and discretion, the legislature sees fit to impose a burden on the traffic in the shape of a tax, for the purpose of diminishing those evils, it does not come within the province of this court to review its action in selecting such means.
There is another branch of this case which seems so free from doubt, that there would be no call for its consideration were it'not that it finds a place among the issues set forth in the record. We refer to the contention, that the lien is illegal, because the assessment on the business of the liquor traffic is in violation of section 18 of the schedule *587 to the constitution, which provides that “ no license to traffic in intoxicating liquors shall hereafter be granted m .this state.” The act of April 5, 1882, known as the Pond law, was declared by a majority of the court, in State v. Hipp, 88 Ohio St. 199, to be, in its operation and effect, a license within the inhibition of the constitution, so far as it required every person engaged in the traffic in intoxicating liquors to pay a specified sum of money annually, and execute a bond, with the further requirement that the person who engaged in such traffic without having executed the bond, or after his bond was adjudged forfeited, should be deemed guilty of a misdemeanor. And the act of April 17, 1883, commonly called the Scott law, was also held by a majority of the court, in Butzman v. Whitbeck, 42 Ohio St. 223, to be in effect a license law, so far as 'it enacted that whoever should engage or continue in such traffic upon land or premises not owned by him, without the written consent of the owner thereof, should be held guilty of a misdemeanor, and liable to be punished by fine or imprisonment or both, at the discretion of the court. Neither of these characteristic features of the two preceding statutes is embodied in the Dow law, and, so far as yet discovered, it went from the legislature with none of the objectionable features of a license.
A license in law may be simply and well defined as a permission, but it is a permission given by some competent authority to do an act which, without the permission, would not be legal. Bouvier’s Law Dict.; Youngblood v. Sexton, 32 Mich. 406. The Dow law.does not hold out permission to engage in the traffic in intoxicating liquors, nor stamp it with illegality, nor prescribe a condition precedent upon which one may have the right to carry on such business. It repeals that portion of section 6941 of the Revised Statutes which forbids the sale of intoxicating liquors to be drank in or upon the- building or premises where sold; and if one chooses to engage in the traffic, he must do so subject to the burden which is afterward imposed upon his business. If he fails to pay the assessment thereon, his *588 business does not thereby become illegal, and although his goods and chattels may by his default become liable to be levied on and sold, the property of dealers in other commodities is also liable to be seized and sold for non-payment of personal taxes. He enters upon the traffic in intoxicating liquors, without a license, and when found in the business the law suffers it to continue, but charged with the burden of a tax.
The distinction is clearly recognized, between a license granted or required as a condition precedent before a certain thing can be done, and a tax assessed on a business which one is authorized to engage in. The Home Insurance Co. v. Augusta, 50 Ga. 530. A license being of the nature of a privilege, it would be a strange incongruity to grant to one the privilege of bearing the burden of a tax. A tax which maybe resorted to for the purpose of restraining what is opposed to the public interests, would hardly be called a license to do that which is sought to be restrained. The two things are entirely distinct in their characteristics. The license may exist without the imposition of a tax, and the tax may be imposed without the granting of a license.
In the constitution of Michigan, it is provided by section 47, article 4 — almost identically as in our own — that “ the legislature shall not pass any act authorizing the grant of license for the sale of ardent spirits or other intoxicating liquors.” How far a tax on the business might be regarded as a license, and so an infringement of this provision of the constitution, came under the examination of that eminent jurist, Mr.Justice Cooley, in Youngblood v. Sexton, supra. The whole field of legal thought and investigation on the subject was covered by that leading case^ and its reasonings and conclusions commend themselves, to the enlightened judgment of every court. The language approvingly cited in The State v. Hipp, supra, we here adopt. “The object of a license,” says Mr. Justice Mam ning, .“is to confer aright that does not exist without a license. Chilvers v. People, 11 Mich. 43, 49. Within this *589 definition, a mere tax upon the traffic can not be a license of the traffic, unless the tax confers some right to carry on the traffic which otherwise would not have existed. ¥e do not understand that such is the case here. The very act which imposed this tax repealed the previous law, which forbade the traffic and declared it illegal. The trade then became lawful, whether taxed or not; and this law, in imposing the tax, did not declare the trade illegal in case the tax was not paid. So far as we can perceive, a failure to pay the tax no more renders the trade illegal than would a like failure of a farmer to pay the tax on his farm render its cultivation illegal. The state has imposed the tax in each case, and made such provision as has been deemed needful to insure its payment; but it has not seen fit to make the failure to pay a forfeiture of the right to pursue the calling. If the tax is paid, the traffic is lawful; but if not paid, the traffic is equally lawful. There is consequently nothing in the case that appears to be in the nature of a license. The state has provided for the taxation of a business which was fouud in existence, and the carry-' ing on of which it no longer prohibits; and that is all.” "We can add nothing to these words, and we deem it unnecessary to offer any further considerations upon this branch of the case before us. The judgment of the circuit court, we are of opinion, should be affirmed.

Judgment accordingly.

Owen, C. J., and Eollett, J., dissent.