D. H. BALDWIN & CO. v. NANNIE PELTON AND JOHN H. GIBSON, TREAS., ETC.

Lien of the state for taxes under the Dow law takes precedence of other liens, even a purchase-money mortgage. Possession of property is conclusive evidence of ownership under tax laws The fact that the business in which the property is used is unlawful does not affect the right of the state to collect the tax by sale.

HOSEA, J.

Petition was filed September 17, 1903, in foreclosure of a chattel mortgage dated March 19, 1901, to secure balance

of purchase money due upon a piano; and recites the fact of seizure by John H. Gibson, treasurer of Hamilton County, and threat of sale. The court is asked to take possession by a receiver, to marshal liens, etc. On the same day, the sheriff was appointed receiver.

Gibson, treasurer, by way of cross-petition, sets up due proceedings under the Dow law (R. S. 4364-9 *et seq.*), whereby the property was levied upon and seized by the treasurer for the non-payment of the tax therein provided for, assessed against the principal defendant, Pelton, for one year from the fourth Monday in May, 1903, and claiming that such levy takes precedence of all other liens.

It is also alleged that the principal defendant, Pelton, kept the premises as an improper house in connection with the sale of liquor.

The treasurer asks for a sale and satisfaction of his lien of $436.80.

Upon the hearing it was shown that the piano was sold by the plaintiff and a chattel mortgage duly taken upon deferred payments, and was valid as to a balance of about $40 remaining unpaid at the date of levy; that the defendant, Nannie Pelton, kept an improper house, and sold liquors; and that the piano was part of the furniture of the establishment, all of which was duly levied upon for the Dow tax and penalties.

The question raised and argued in the case, is whether the lien of the state for the tax under the Dow law can take precedence of the lien of purchase-money mortgage.

The statute in question contains the following provisions:

4364-9. "Upon the business of trafficking in spirituous, vinous, malt or any intoxicating liquor there shall be assessed yearly and shall be paid into the county treasury as hereinafter provided, by every person, corporation or co-partnership engaged therein, and for each place where such business is carried on by and for such person, corporation or co-partnership, the sum of three hundred and fifty dollars."

4364-10. Provides for the lien of the assessment on real property, and the time and manner of payment.

4364-11, Provides for apportioning the assessment to the portion of the assessment year covered, and for refunder in proper cases in accordance therewith.

4364-12. Provides for the collection by the county treasurer in case of a refusal to pay, by distress, and sale, as upon execution, of the goods and chattels of such person, corporation, or co-partnership—

"And, in case of the refusal to pay the amount due, he shall levy on the goods and chattels of such person, corporation, or co-partnership, wherever found in such county, *or on the bar fixtures or furniture, liquors, leasehold and other goods and chattels, used in carrying on such business. which levy shall take precedence of any and all liens, mortgages, conveyances, or incumbrances hereafter taken or had on such goods and chattels so used in carrying on such business; nor shall any claim of property by any third person to such goods and chattels, so used in carrying on such business, avail against such levy so made by the treasurer,"* etc.

The language of the statute is explicit, and leaves little room for discussion of its meaning. The question of the case under this statute is not, broadly, whether the property of A can be taken to satisfy a tax assessed against B, but whether property of A used by B in carrying on a certain business can be seized to satisfy a tax assessed against B in respect to such business.

The distinction is incidentally touched upon in the case of *R. R. Co.* v. *Roach,* 80 N. Y., 339, which arose upon a tax law providing that goods and chattels in possession of or upon the lands of a person against whom a tax is assessed shall be deemed to belong to him, *"and no claim of property made thereto by any other person shall be available to prevent a sale."*

Here the court points out that while the purpose of the statute is to facilitate the collection of taxes and prevent embarrassment to the government through fraud and col-

lusion of parties, yet it must be construed reasonably, and did not apply to property of another incidentally and temporarily upon the land of the tax debtor "and in possession of the owner for his own purposes."

The taxing power of the state being vested in the General Assembly, the judiciary is not concerned in the question of the propriety of the law except it be shown that the mode of exercise of the power transcends the limits fixed by the constitution. *I Cooley on Taxation, p. 47.*

I do not understand the constitutional question is raised by the defendant here, but it has been settled in favor of the law in *Adler* v. *Whitbeck,* 44 O. St., 539, and also in *Anderson* v. *Brewster,* 44 O. St., 576, which have been further approved in 68 O. St., 644, *State, ex rel,* v. *Auditor of Montgomery County.*

Indeed, the constitutional validity of laws of this character making the possession of property conclusive evidence of ownership under tax laws seems to be well established in cases analogous to the present. From an examination of some of these cases it would seem that the Dow law had been framed in view of the principles there enunciated.

Thus, in *Morrow* v. *Dows,* 28 N. J. Eq., 459, the third syllabus is:

"The Legislature has power to make taxes a lien paramount to all rights which the citizen may acquire in lands; and mortgages, or liens taken after the enactment of such law, would be postponed to the payment of the public revenues."

The court in the opinion calls attention to the fact that liens are purely statutory in their origin and says that—

"It is an essential attribute of government that power should inhere in the Legislature to make the taxes (without which it can not be maintained and supported), liens on property paramount to all rights that may be acquired by the citizen. The right to establish the preference necessarily results from the right to tax by uniform laws of taxation, all such property as may be requisite to the execution of

its functions. Mortgages or liens, taken by the individual, after the enactment of such laws, would unquestionably be subject to be postponed to the payment of the public revenues."

Similar views and rulings appear in *Dale* v. *McEvers,* 2 Cow., 118; *Parker* v. *Baxter,* 2 Gray, 185.

In *Hersee* v. *Porter,* 100 N. Y., 403, the general question is elaborately reviewed and discussed upon a tax statute providing for distress of goods and chattels in possession, and a clause that "no claim of property to be made thereto by another person shall be available to prevent a sale." In the case cited, as in the case at bar, the mortgagee permitted the mortgagor to retain possession after default.

After discussing the constitutional question and showing that the provision was not a new remedy, the court continues:

"Each individual in the community has notice of the law and is presumed to understand that if his chattels are by his consent or permission in possession of another, they can be taken for a tax against the person in possession. The law was probably framed to prevent fraud or collusion, and disputes as to title, and each individual in the community may be presumed to have consented that his property shall be subject to the right of the state in this way to enforce the power of taxation, as between the owner of the property seized and the person taxed, the latter ought to have paid the tax, and we see no reason to doubt that if the payment is enforced out of another's property in his possession, the true owner has a remedy against the one who ought to have paid it.

"The proceeding * * * was an execution of the power of government in respect to taxation, and, although the right to take the plaintiff's property for the tax was not adjudged in a legal proceeding, the act of the Legislature and the administrative acts under it, is, we think, due process of law within the meaning of the constitution."

See, also, *Sheldon* v. *Van Buskirk,* 2 N. Y., 473; *R. R. Co.* v. *Roach,* 80 N. Y., 339; *Sears* v. *Cattrell,* 5 Mich., 251; *Dunlap* v. *Gallatin,* 15 Ills., 7.

It is claimed in defense that the provisions of the statute cutting out mortgages and other liens should not be held to apply to a vendor's lien, because (1) the lien of the ven‧ dor is the highest and best known for the law, and (2) as the sale of liquor in a house of this character is unlawful, the seller can not be held to have contemplated such use of the mortgaged property at the date of sale.

As to the first proposition, it is sufficient to say that the statute makes no distinction between a vendor's mortgage and any other. "The statute does not inquire"—as was said in *Hershee* v. *Porter, supra*— "whether the legal title is in A or B, but conclusively adjudges it to be in the person taxed for the purpose of seizure and sale, provided it is in his possession. For the purpose of collectig the tax the actual ownership, in contemplation of the statute, follows the possession. The possession under the statute is not merely a badge of ownership, it is title, so as to subject the property to seizure and sale for a tax against the possessor."

The intention of the owner of the property, therefore, can make no difference in the application of the law. And a little reflection upon the endless possibilities of defeat to the state in the collection of such taxes under the rule contended for here will satisfy the mind that any other construction of the law would practically defeat its operation. It is not, therefore, to be regarded as an unnecessarily harsh rule, but one absolutely necessary to secure the rights of the state, and therefore demanded by the public interest.

The owner, as one of the general public, has conferred upon the Legislature the power in question, and is interested in upholding it in behalf of the state in a higher degree than in defeating it in respect of his private interest as an individual. *McCullough* v. *Maryland,* 4 Wheat., 428.

The fact that the business is an unlawful one does not affect the right of the state to collect the tax. As was pointed out by Beldon, J., in *DeMonte* v. *Pabst,* 49 Ohio Law Bul-

letin, 97 (citing the language of Judge Pugsley in *Stevenson v. Hunter*, 2 N. P., 300) :

"It would be an anomaly to hold that a violation of the law relieves one of the payment of the tax. The result would be that those who are lawfully engaged in carrying on the business must pay the tax, while those who carry on the business in violation of the law are exempt. This would be putting on a premium on disobedience to the law."

And the same point was decided, upon unlawfulness created by a municipal ordinance, in 65 O. S., 49, *Conwell v. Sears, Treasurer,* in which case Judge Shauck remarks that at the time the Dow law was passed, and for a half century before, there was a statute forbidding throughout the state the sale of intoxicating liquors to be drank on the premises where sold; and that the growth of the business, notwithstanding the interdiction of the traffic, showed that, although unlawful, it continued to exist; and therefore the Dow law must be taken to apply to the facts as they existed, and that it was purposely drawn "in terms that admit of no exception."

The action of the treasurer is sustained, and upon sale of the property distribution will be made in accordance with these holdings.

*Drausin Wulsin,* for plaintiff.
*Ampt, Ireton, Collins & Schoenle,* County Solicitors, for defendant.