ROWE *vs.* RICHARDSON and others.

In order to give a sheriff a cause of action upon the official bond of his deputy, there must not only be a technical breach of duty, on the part of the deputy, but such a breach of duty as to occasion pecuniary damage to the plaintiff.

The bail of a deputy sheriff are only responsible for his official acts as a general deputy. They are not liable for a want of courtesy on the part of the deputy, towards his principal, nor for an act which may be annoying, or even troublesome to the sheriff, so long as his conduct is strictly in accordance with his duty as a public officer.

A sheriff cannot maintain an action upon the bond of his deputy, for the act of the latter in levying upon, and selling, under and by virtue of a junior execution, property upon which the sheriff had previously levied, by virtue of a prior execution against the same defendant.

If a sheriff, having two executions against the same person, sells on the junior one, the sale is valid. But the sheriff is bound to pay over the proceeds of the sale to the plaintiff in the prior execution.

And if the sale is made by a deputy of the sheriff, and he refuses to apply the proceeds upon the prior execution, or to pay them over to the sheriff, to be thus applied by him, such refusal is a breach of the condition of the deputy's official bond; the liability of the sheriff being a legal consequence of the default of such deputy.

DEMURRER to the plaintiff's declaration.  The action was debt, brought by the plaintiff as late sheriff of Oswego county, upon a bond given to the plaintiff by the defendant Richardson and the other defendants as his sureties, upon Richardson's being appointed by the plaintiff deputy sheriff.  The condition of the bond was that Richardson should well and faithfully discharge the duties devolving on him by virtue of the said appointment, and should indemnify the plaintiff, and save him harmless from all loss, damages, costs and charges, &c. to which he might be put by, from, or in consequence of any acts done or committed by Richardson, or omitted to be done by him as such deputy sheriff.  The first breach assigned was that on the 21st of January, 1841, a fi. fa. was issued out of the supreme court in favor of James D. Fisher and William Martin against one Evert Van Epps, and directed to the sheriff of the county of Oswego, and delivered to the plaintiff as such sheriff; which

Rowe *v.* Richardson.

writ was tested the first Monday of January, 1841, command-
ing said sheriff to levy $297,65 of the goods and chattels of
said Van Epps in the said county of Oswego, to satisfy a judg-
ment recovered in that court by Fisher and Martin against Van
Epps. The execution was returnable on the first Monday of
May then next, and on it was endorsed a direction to " levy for
and collect $297,65, with interest from 18 Jan. 1841, till paid,
besides sheriff's fees and poundage." That by virtue of said
writ the plaintiff, by Richard D. Hubbard his deputy, levied on
and seized, in his said county, divers goods and chattels of Van
Epps, specifying them, of the value of $400 and abundantly
sufficient to satisfy the said execution, which levy was made
before the return day of the execution, to wit, on the 22d of
January, 1841. By virtue of which writ and levy the plaintiff
became liable for the goods, and the avails thereof, to satisfy
such execution. That on the 15th of December, 1841, the
plaintiff being yet sheriff, holding the writ aforesaid, and the
said levy made on the goods and chattels of Van Epps being
yet in full force, and unsatisfied, and the plaintiff, as such sher-
iff, being held responsible for the goods so levied on, another
writ of fi. fa. was issued out of the Oswego common pleas, in
favor of John C. Van Epps, against the said Evert Van Epps,
which was directed to the sheriff of the county of Oswego and
delivered to the defendant Richardson as deputy sheriff; by
which writ the sheriff was commanded that of the goods and
chattels of the said Van Epps in said county, he cause to be
made $465,65, to satisfy a judgment recovered in that court by
John C. Van Epps against the said Evert Van Epps, and that
he have that money before such court on the second Monday
of December, 1841. Said writ was tested the 3d Monday of
September, 1841, and a direction was endorsed on the back, to
levy $465,65, with interest from Dec. 2, 1841, besides the sher-
iff's fees. That Richardson, after he as such deputy received
the said writ, and before the return day thereof, and well know-
ing the facts of the former execution in the hands of the sheriff,
and of the levy upon the goods and chattels of Van Epps, and
of the responsibility of the sheriff and of his liabilities touching

Rowe *v.* Richardson.

the same, levied, advertised, and sold the said goods and chattels of Van Epps, under and by virtue of the said last mentioned writ. That at the time and before the sale of such goods and chattels, by Richardson, he was expressly informed by the plaintiff, to wit, by said Hubbard his deputy, of the said former execution, and the levy made under and by virtue thereof, and that such goods and chattels were in fact then advertised for sale on the prior execution, by the said Hubbard, and Richardson was then and there required by Hubbard to desist and refrain from such sale, and to postpone the same until after the sale under the prior execution had taken place; and the plaintiff also gave notice and demanded of Richardson that if he persisted in selling such goods and chattels, he should apply the avails thereof to the payment and satisfaction of the former execution for the indemnity of the plaintiff. That the defendant Richardson, well knowing the premises, and the rights and responsibilities of the plaintiff, and being also informed of his own duty as a deputy sheriff, by said Hubbard, and in fact forbid selling such goods and chattels, or in any way disposing of, or intermeddling with them, except to apply the avails to the satisfaction of the former execution, and regardless of his duties as deputy sheriff, and the condition of his bond, did, on the 15th of January, 1841, sell the said goods and chattels at public auction and deliver the same to the purchasers, who immediately removed the same out of the county, and the sheriff was wholly deprived of the benefit thereof to satisfy the former judgment and execution. And the plaintiff, by said Hubbard his deputy, was obliged to return the said execution unsatisfied. That Richardson, at the time, and since, such sale and disposition of the goods by him, although often requested, has wholly neglected and refused to make the money from the said property and to apply the avails thereof, or of the said sale, to the payment and satisfaction of the execution in favor of Fisher and Martin, or to pay the same or any part thereof, to the plaintiff, to enable him to apply and pay the same to the said Fisher and Martin; and that the defendant Richardson had refused to render to the plaintiff any account of the avails of such goods

and chattels, &c. but on the contrary thereof had wholly neg
lected to collect any of the moneys arising from the sale so
made by him, or to return the execution; and that he had
wholly failed well and faithfully to discharge the duties devol-
ving on him as such deputy sheriff, and although often requested
so to do, had entirely failed well and truly to indemnify the
plaintiff and save him harmless from all damages, costs and
charges he had been put to and obliged to pay and suffer, in
consequence of the acts done or committed by the said Rich-
ardson, or omitted to be done by him as such deputy sheriff in
the sale and disposition of the said property, and the total neg-
lect to make or collect the money from the avails of the said
sale, or the value of the said goods, or any part thereof, and
apply the same to the payment and satisfaction of such former
execution.   By reason whereof the plaintiff had been put to
great trouble and expense, and had been forced and obliged ne-
cessarily to pay out of his own funds the amount of Fisher and
Martin's execution, and to lay out and expend divers large sums
of money, to wit, $2000, in consequence of the neglect of Rich-
ardson to perform the duties of deputy sheriff so as to save the
plaintiff harmless touching the business done by Richardson as
his deputy.

The second breach assigned, was that by reason of the sale
and disposition of the said goods and chattels of the said Evert
Van Epps by Richardson, the plaintiff, by said Hubbard, his
deputy, was under the necessity to return the prior execution
unsatisfied, and that the said goods and chattels had been sold
on another execution.   That Van Epps was not, at the time
of the levy by Hubbard, nor at any time afterwards, possessed
of any personal property, other than that levied on, nor of any
real estate or chattels real in the said county, to satisfy the ex-
ecution in his hands, or any part thereof.   And that in conse
quence of the sale of the property, the plaintiff became liable and
was, by the said Fisher and Martin, held responsible for the
amount of their execution.   That in July, 1844, Fisher and
Martin recovered a judgment in the supreme court against the
plaintiff for the amount of the judgment and execution in their

favor against Van Epps, and the costs of suit. That the plaintiff defended the action and made use of the proper and legal defence thereto; and was put to great trouble and expense therein, to a very large amount, to wit, the sum of $10,000 over and above the said judgment in favor of Fisher and Martin against Van Epps. And the plaintiff averred that the damage, costs and charges, trouble and expense to which he had been put by and in consequence of the acts done or omitted (improperly) to be done by the said Richardson as such deputy sheriff, amounted to a large sum, to wit, $10,000, &c.

To the whole of this declaration the defendant demurred specially, assigning several causes of demurrer.

*D. H. Marsh*, for the plaintiff.

*R. H. Tyler*, for the defendant.

*By the Court*, PRATT, P. J. There are two questions presented by the demurrer in this cause. First. Whether there is a substantial breach of the condition of the bond assigned in the plaintiff's declaration; and Secondly, Whether, if there be a substantial breach assigned, such assignment is defective in form.

The declaration is very unskilfully drawn; and it is somewhat difficult to determine which of the numerous allegations in the declaration the pleader relied on, as constituting a breach of the condition of the bond. In order to give the plaintiff a cause of action, there must not only be a technical breach of duty on the part of the deputy, but it must be such a breach of duty, as to occasion pecuniary damage to the plaintiff. The object of the bond is clearly to indemnify the sheriff against damage or liability in consequence of his deputy's neglect of duty. And however gross may be his derelictions, his bail, we apprehend, are not liable, unless the sheriff has been damaged or been made legally liable in consequence of such dereliction. (*Hughes* v. *Smith*, 5 *John.* 168.)

Again; we conceive it to be a clear proposition that the bail

of a deputy sheriff are only responsible for his official acts as a general deputy. They are not responsible for a want of courtesy on the part of the deputy, towards his principal, nor for an act which may be annoying or even troublesome to the sheriff, so long as his conduct is strictly in accordance with his duty as a public officer. (*Tuttle* v. *Cook,* 15 *Wend.* 274. 6 *Barn. & Cress.* 739. *Bacon's Abr. tit. Sheriff, H. sub.* 2.)

In this case, a fi. fa. issued to the sheriff, came into the hands of Richardson, his deputy, to be executed. He levied upon the property of Van Epps, the defendant in the execution, and advertised and sold the same. Thus far, we are unable to discover any breach of duty on his part, as a public officer. He followed the directions contained in the process, and for thus doing it is difficult to perceive wherein he has done wrong as a general deputy. It is alleged in the declaration that an older execution was in the hands of the sheriff, which had been previously levied upon the same property and upon which the property ought to have been sold. In answer to this allegation, if the property ought to have been sold upon the prior execution, we are unable to perceive any good reason why the sheriff did not take it into his own exclusive possession and sell it. The property was in his legal custody, and under his control, by virtue of the prior levy; nay, for that matter, it was in his custody, by virtue of Richardson's levy. He was therefore under no legal compulsion to deliver it over to Richardson; or if the latter got possession of it without his knowledge, the sheriff might retake it. He surely had the power, legally and physically, to control it; and he ought not to be allowed to stand still and see his authority set at defiance by his deputy, and then bring an action against his bail for damages. If the deputy insisted on controlling the property, the sheriff could have removed him, and settled the controversy at once. Thus far, then, we are of opinion that the deputy was guilty of no breach of official duty as a public officer, and that his conduct was not such as to impose any liability upon his bail.

But there is an additional allegation, that the deputy did not make any money on the sale, or if he did that he has neglected

and refused to account with the plaintiff for the same.    Wheth-
er that constitutes a breach °of the condition of the bond, for
which an action can be sustained, depends upon this question
of law.   Was the sheriff bound, or had he the right to apply
the proceeds of the sale upon the prior execution?   For the
plaintiff must show not only the misconduct of the deputy, but
that he has been made legally liable for such misconduct, or
has been mulcted in damages therefor.   It does not appear
that the sheriff has suffered any damages for any negligence
in regard to the second execution.   It therefore would seem to
follow that unless he was authorized to apply the proceeds of
the sale on the prior execution, the damage which the plaintiff
has sustained, was not in consequence of the failure of the
deputy to account for the proceeds of the sale, but rather in
consequence of the sale itself which the sheriff had the power
to prevent; and he ought to have prevented it.

   It becomes material to inquire therefore whether the plain-
tiff could legally have made that application.   This question
is not entirely free from difficulty.   In the case of *Rybalt* v.
*Peckham,* cited in *Hutchinson* v. *Johnston,* (1 *T. R.* 729,) it
seems to have been held that when two executions against the
same defendant are delivered to the sheriff at different times
and he sells upon the last execution, he is bound to apply the
proceeds upon that execution, although the sheriff will be lia-
ble to the plaintiff in the first execution for the amount.   The
case is not reported at length, but a note of the decision to that
effect is given.   This decision was approved by Nelson, Ch. J.
in the case of *Fenton* v. *Folger,* (21 *Wend.* 676,) but the point
was not necessarily raised.   (*See also Sandford* v. *Roosa,* 12
*John.* 162; 1 *Lord Raymond,* 251.)

   But in the case of *Russell* v. *Gibbs,* (5 *Cowen,* 390,) the very
opposite was held.   In that case an execution came into the
hands of one deputy who levied upon a mare of the defendant.
After the return day of that execution, another execution came
into the hands of another deputy of the same sheriff, which
was levied upon the property of the defendant therein, except
the mare in question, which had been removed out of the

county into the state of Vermont, before the receipt of the execution. The property was advertised for sale and was sold under the last execution, together with the mare in question, which had been returned the day before the sale. Russell, who owned the judgment upon which the former execution issued, bid off the mare. The sheriff insisting that the proceeds of the sale should apply on the execution upon which the property was sold, brought his action against Russell for the price. The court held that the property being in the sheriff's hands by the levy on the first execution, the sale under the last execution was regular; but that the sheriff was bound to apply the proceeds upon the first execution. If this decision is good law it is decisive of the question. The sale under the last execution, in the case at bar, was undoubtedly good to pass the title. (21 *Wend.* 676. *Gra. Pr.* 384. 4 *Cowen,* 461.)

The sheriff therefore could not seize and sell the property again. The levy upon the property by virtue of the prior execution was pro tanto a satisfaction of it. If the sheriff could not apply the proceeds of the sale upon that execution, the same property might have the effect, as to the defendant, to satisfy both executions, although it was only sufficient in value to satisfy one. We can see no good reason why a rule should be adopted which might work such manifest injustice. Each deputy represents the sheriff, and is in contemplation of law, as to others, the sheriff himself. The legal rights of the parties to the execution are the same as if the sheriff had held both executions, and had in person made the levy and sale. In such case it cannot be doubted that this court, upon application, would have compelled him to pay over the proceeds to the plaintiff in the first execution. If we are right in this view then it follows that the liability of the sheriff was a legal consequence of the default of the deputy Richardson, in not paying over the money made on such sale, and not of the act of selling. The sheriff could not maintain an action against Hubbard, but must seek his remedy against Richardson, or nowhere.

Thus much upon the merits. It still remains to consider

whether the facts set out in the assignment of breaches are sufficient to give the plaintiff a cause of action, and if either of the assignments is good, the demurrer being to the whole declaration, the plaintiff is entitled to judgment.

First. The second execution is alleged to have been delivered to Richardson on the fifteenth day of December, and it is alleged to have been returnable on the second Monday of the same month. The execution, therefore, would seem not to have been delivered to the defendant Richardson until after the return day, and Richardson, in meddling with the property, was a mere trespasser. He was not acting under his process, and his bail ought not therefore to be made liable.

Secondly. The first assignment is uncertain, containing many allegations repugnant to each other and exhibiting any thing but skill on the part of the pleader.

Thirdly. The second assignment alleges as misconduct on the part of Richardson, only the sale of the property. We have shown above that there was no misconduct in the sale alone. The same difficulty in relation to issuing the execution applies to this assignment as well as to the other.

We think both assignments are therefore bad in form. There must be judgment for the defendant on the demurrer, with leave to amend.

