## SUPREME COURT.

LOYD C. YALE agt. JOHN MATTHEWS and VICTOR M. DEMICK.

THE OSWEGATCHIE BANK agt. JOHN MATTHEWS.

In order to secure a *lien* upon property by virtue of an *attachment,* whether issued under the Revised Statutes or under the Code, there must be an actual *levy* or *seizure* of the property; and this is the rule as to *real estate,* and the return of the writ or the inventory attached is the *evidence* of the seizure.

But the *priority of liens,* where several such attachments are issued against the same defendant, and levied upon the same property is determined by the Revised Statutes, (3 *R. S.,* 645, 5*th ed.* §§ 14, 15,) and the attachment *first delivered to the officer,* has priority; although a seizure of the property may be first made under an attachment subsequently delivered to him or his deputy.

*Schenectady General Term, Fourth District, Jan.,* 1861.

JAMES, ROSEKRANS, POTTER and BOCKES, *Justices.*

IN the second above entitled action, an attachment was issued pursuant to chapter four, title seven of the Code of Proceedure, by the county judge of St. Lawrence county, on the 23d day of December, 1859, and was delivered by Mr. Brinkerhoff, the plaintiff's attorney, to Daniel P. Haskell, one of the deputies of the sheriff of said county, on the same day at four o'clock, P. M.

On the same day the plaintiff in the first above entitled action applied to a special county judge in said county and obtained an attachment under the same statute, against the defendant Matthews, which was delivered to O. O. Wheeler, another deputy of the same sheriff at 7.30, P. M.

The plaintiffs in both actions, as well as the said deputies, were not informed of the proceedings taken in the different actions.

Deputy Wheeler, by virtue of the attachment in the first above entitled action, at nine o'clock on the same evening of its receipt by him, attached the property mentioned in the inventory set out in the motion papers.

On the next day and after said last named attachment was served, defendant Haskell levied the attachment in the second above entitled action upon the same property.

An order was afterwards made by the special county judge in the first action, and the property was mostly sold as perishable.

The money made on such sale remains in the hands of the sheriff.

On February 21, 1860, judgment was entered in the first action for

| | |
|---|---:|
| Damages, | $208 51 |
| Costs, | 137 84 |
| Judgment, | $846 35 |

and execution issued to sheriff on the 24th of same month. And judgment was entered in second action on 20th April, 1860, for $387.51, and execution issued May 28th, 1860.

The plaintiffs in both actions claim the moneys in the sheriff's hands, and there not being sufficient to satisfy both executions, the sheriff refuses to pay upon either without the direction of the court.

A motion was made by plaintiff in first action, at the last St. Lawrence June term, that the sheriff first pay upon the execution in that action, which motion was denied, with ten dollars costs, and the sheriff was ordered to first satisfy the execution in the second action with such moneys.

The motion was decided by Mr. Justice ROSEKRANS, who delivered the following opinion.

ROSEKRANS, Justice. "Third Revised Statutes, 645, of 5th edition, sections fourteen and fifteen, settle the priority of liens in favor of the Oswegatchie Bank, and the motion is denied, with ten dollars costs."

The plaintiff in the first action appealed from the order entered upon this decision, and the question as to who is

entitled to the moneys in the sheriff's hands comes before the court on such appeal.

DART & TAPPAN, *attorneys for Yale, appellant.*

I. The provisions of the statute referred to by the justice at special term has no application to attachments under the Code of Procedure.

1st. Because attachments under the Revised Statutes were jurisdictional writs, and like executions, bound the property of the defendant after the delivery to the sheriff, or at least from the publication of the notice, (3 *R. S., 5th ed.,* 79, *and following,*) consequently, as between attaching creditors, priority would have thus been determined probably without that statute, and it was merely a declaratory act.

2d. The attachment provided for by the Code is a provisional remedy, solely for the benefit of the party obtaining it, and requires the sheriff to levy upon so much of the property of the defendant as shall be necessary to satisfy any judgment he may obtain in the action. (*Code,* § 231.) It creates no lien until an actual seizure, and when levied the sheriff is required to sell the property for the satisfaction of the judgment in the action, and in this respect is like a justice's attachment, which by same statute can have no preference except by an actual levy. (3 *R. S., 5th ed.,* 645.)

II. Section 468 of the Code repeals all laws inconsistent with the remedies provided by that act, and if priority of the lien of attachment is determinable by the time of the actual levy thereof, then priority by delivering to the sheriff, as provided by the Revised Statutes, would be palpably inconsistent with the provisions of the Code in that respect, and would consequently come under the aforementioned repealing section.

This question has undergone judicial interpretation by this court.

In *Burkhardt* agt. *Sanford and Farnham*, (7 *How. Pr. R.*, 329,) where the court determine that the creditors' lien upon property by virtue of a Code attachment, attaches upon the *levy* or *seizure of the property* by virtue of the warrant of attachment, whether it be real or personal.

The question in this case arose between a party who had purchased real estate, held by the defendant in the attachment suit between the time of the delivery of the attachment to the officer to be served and the actual seizure by him. It was held by the court, TAGGART, J., at Erie special term, that the attaching creditor acquired no lien until the actual levy under the attachment.

In *Learned and others* agt. *Vandenburgh, and Ransom and other* agt. *same, and Adams* agt. *same,* (7 *How. Pr. R.*, 379,) which was a motion for direction to the sheriff of Greene county; an attachment had been issued in first two above entitled suits, on the 10th of April, 1852, by virtue of which the sheriff had levied upon all the personal property of the defendant; on the 17th of April, an attachment was issued in favor of Mallary and Ingalls under which the sheriff, seized the real and personal property of defendant. The personal property was insufficient to satisfy the first two attachments.

Upon executions issued in above entitled actions the sheriff sold the real estate; the question was where the proceeds should be applied, and the court determined that neither of above plaintiffs were entitled to the money, that the attachments in first two actions, although first delivered to sheriff but not having been levied upon the real estate, and that in favor of Mallary and Ingalls having been levied by the same sheriff while the previous attachments were in his hands, acquired a lien upon such real estate, and that the proceeds of the sale were properly applicable upon it. This case was reviewed at the Albany general term, upon appeal, and the order affirmed. (8 *How.*, 77.) PARKER, J., in the opinion of the court, says : " The object of an attach-

ment under the Code is to obtain security for the satisfaction of such judgment as the plaintiff may recover, (*Code,* § 227,) and not like the proceedings under the Revised Statutes to wind up the affairs of the person proceeded against, and have his property distributed by trustees among all his creditors. It is not of itself a lien on property, but only on such property as is levied on under it.

If the provisions of the Revised Statutes, relative to priority of the lien of attachments issued under the Code, were in force, the seizure of property under junior attachments would enure to the benefit of the senior without any seizure by virtue of such senior; and it is impossible to reconcile that decision with such an interpretation of the law.

If such were the law, the whole levy of Mallary and Ingalls under their attachment would have accrued to the benefit of the plaintiff in the first attachments; they certainly could not have been in a worse position by levying on the personal property than if they had levied upon none.

III. The question as to whether the sheriff has made himself liable by not levying the attachments in the order in which he received them, cannot properly be considered on this motion. (*See cases above referred to.*)

IV. See also *Houghton* agt. *Ault,* (16 *How. Pr. R.,* 77.) Had the defendant Matthews chosen to have given bail to plaintiff in the first action under section 241 of the Code, and had thereby discharged the property from the attachment, and had sold it previous to the actual levy of the senior attachment, it will not be pretended that the plaintiff under the senior attachment could claim the benefit of the bond; and yet, why not, if the levy under the junior attachment enured to the benefit of the senior attachment? (*Howard's Code,* 342, 352.)

　　　J. R. BRINKERHOOF, *attorney for Oswegatchie Bank, respondent.*

By the court, ROSEKRANS, Justice.   The Revised Statutes provided for the issuing of attachments against property in various cases as a remedy for the collection of debts. This process could be issued against absconding, concealed and non-resident debtors (3 *R. S.*, *5th ed.*, 78;) against debtors confined for crimes (*Id.*, 90;) against ships and vessels (*Id.*, 795,) and against foreign corporations.   (*Id.*, 754, 2*d vol.*, 3*d ed.*, 553.)   In all of these cases, except the last, the proceedings were for the benefit of all the creditors of such debtors, and all persons who had liens against such ships and vessels; and each of the statutes provided, in substance, if not in terms, that the proceedings were to be taken under the process first issued.   In relation to proceedings against absconding, concealed and non-resident debtors, the statute provided (3 *R. S.*, 85, §41) that if, *after the issuing of any warrant of attachment,* any other warrant should be issued and levied upon any property of the debtor, such subsequent warrant and service shall be deemed to be a part of the proceedings upon the first application, in the same manner as if such subsequent warrant had been issued by the officer who granted the first warrant.   In the proceedings against ships and vessels no second warrant could be issued, unless the first was superseded (*Id.*, 797, §7;) but the proceedings by attachment, against foreign corporations, were for the sole benefit of the plaintiff in the suit, commenced by the issuing of the process.   (2 *R. S.*, 3*d ed.*, 553, §15.)   This was the only case under the Revised Statutes where a suit could be commenced in a court of record by attachment, and the only instance in which the proceeding was for the sole benefit of the plaintiff.   The statute expressly provided that the property seized, or the proceeds of such portion as should be sold, should be kept to answer the judgment which might be obtained in the suit.   (*Id.*, 554, §21, 3*d ed.*, *vol.* 3, 757, §19.)   The statute (3 *R. S.*, 645, *5th ed.*, §§14–15,) which provided that if there should be one or more executions,

HARVARD LAW SCHOOL LIBRARY

and one or more attachments against the property *of the same defendant*, or if there be several attachments, that the one first delivered to an officer to be executed shall have preference, notwithstanding a levy might be first made under another attachment or execution, had reference solely to attachments against foreign corporations. It speaks of process "issued *out of a court of record against the same defendant*," which language is only applicable to a party against whom a suit is commenced. Under the Revised Statutes the absconding, concealed, or non-resident debtor, or the imprisoned debtor, or the owner of the ship or vessel against which process of attachment was issued, were neither of them *defendants;* nor were such attachments issued *out of a court of record.* They were issued by certain officers out of court, acting as commissioners, and not as a court. It had been the law ever since the statute of frauds was enacted, (29 *ch.* 2) that, instead of a debtor's goods being bound by execution from the test of the writ, they should only be bound from the delivery of the writ to the sheriff; and that, in the case of several writs against the same defendant, that which first came to the sheriff's hands should be first satisfied. (*Smallcorn* agt. *Sheriff of London, Comb.*, 428.) The facts, points and names of the parties in this case, are said to be all mistaken, by Comberback; (4 *East*, 540) but the correct report will be found in 1 *Ld. Ray.*, 252; 1 *Salk.*, 320; *Comyns*, 35; *see also Hutchinson* agt. *Johnston*, 1 *T. R.*, 727; *Jones* agt. *Atherton*, 7 *Taunt.*, 57. There is a strong analogy between the attachment which is to secure the defendant's goods, to answer the plaintiff's judgment, and an execution issued to obtain satisfaction of the plaintiff's judgment. The principal difference is in the point of time in the progress of the suit at which they are issued. The purpose of the two writs is the same. There was, therefore, a manifest reason for placing both kinds of process upon the same footing, and establishing a rule by which the priority of both should

be determined in cases where several writs of both, or either kind, against the same defendant, should be issued to the same officer.

The statute effecting this object has never been repealed, but has been continued in force expressly by the 17th section of the first article of the constitution of the state, and as to executions by the 291st section of the Code. The Code (§ 227, and following) has added to the number of cases in which the preliminary process by attachment in court suits can be resorted to for the collection of debts, and in which the process is solely for the benefit of the plaintiff in the action. It secures property to answer the judgment which he may obtain; it includes actions for the recovery of money, against foreign corporations, or against non-resident defendants, or absconding or concealed debtors, or any person or corporation about to remove any of his or its property from the state, or defendants who have assigned, disposed of, or secreted, or are about to assign, dispose of or secrete any of their property, with intent to defraud their creditors.

There is nothing in the Code inconsistent with the provision of the Revised Statutes, regulating the priority of attachments where several are delivered to the same officer against the same defendant, and a levy is made by virtue of all upon the same property. The difference between the Revised Statutes and the Code, as to the extent of the levy to be made under the old and new attachments, cannot affect the question of preference where the attachments are levied upon the same property. The property levied upon, or attached, is only held by and from the date of the seizure. (6 *Hill's R.*, 363; *Burkhardt* agt. *Sanford and others*, 7 *How. Pr. R.*, 329; *Learned* agt. *Vandenburgh*, 7 *How. Pr. R.*, 379; *S. C.*, 8 *How. Pr. R.*, 77.) In the last case PARKER, J., says: " It (the attachment) is not of itself a lien on property, but only on such property as is levied upon under it. In this respect it is like an execution

against personal property; but as to real property it is different from an execution, because, under an attachment, the lien depends upon an actual levy, whereas under an execution it exists by virtue of the previous docket of the judgment on which the execution was issued." The rule prevails in regard to executions, that where a levy is made by virtue of one, and afterwards another, against the same defendant, comes to the hands of the same officer, the levy already made shall enure to the benefit of the plaintiff in the second execution, and be regarded as made under it. This rule does not seem to be applicable to attachments. Under each attachment there must be an actual levy or seizure. This is the rule even as to real estate, and the return of the writ, or the inventory attached, is the evidence of the seizure. The case of *Learned* agt. *Vandenburgh, supra,* upon these principles, is not inconsistent with the ruling in the case under consideration at special term. In that case the surplus money on sale of the defendant's property, which was the subject of contention, arose from the sale of his real estate. Five attachments had been issued by as many different plaintiffs on different days, between the first and twelfth days of April, under all of which the sheriff had seized *all the personal property* of the defendant. On the 17th of April another attachment in favor of Mallary and Ingalls was issued, under which the sheriff attached the same personal property, and *all the real estate* of the defendant. The personal property was sold, and, did not satisfy all the judgments in the actions in which attachments had been issued, before the 17th of April. Three hundred and seventy-five dollars was realized from the sale of the real estate, and the court held that it should be applied to the payment of the judgment in favor of Mallary and Ingalls, in preference to those in favor of parties who had had attachments issued prior to that of Mallory and Ingalls, because the former *had not secured any lien* by their attachments, which were levied *only upon the personal*

*estate.* This left the real estate free for the operation of the attachment of Mallary and Ingalls, *on whose behalf alone* it was attached. HARRIS, J., says in the same case (7 *How. P. R.,* 382:) "When several attachments *have been served upon the same property,* the priority of their respective liens must be determined, I suppose, by the order in which the attachments were delivered to the sheriff." In this case the several attachments were *served upon the same property,* and in accordance with the provisions of the Revised Statutes, already referred to, and the opinion of Mr. Justice HARRIS, above quoted, the attachment first delivered is entitled to priority, although the seizure of the property was first made under the attachment, which was subsequently issued.

The order of the special term should be affirmed, with $10 costs.