JOSEPH VAN CAMP, Respondent and Appellant, *v.* EDWARD P. SEARLE, as Late Sheriff of the County of Orleans, and Others, Respondents, GEORGE C. BUELL and Others, Appellants and Respondents.

*Lien of attachments — priority of executions — sufficiency of affidavits used to obtain an order for — when attachments will be granted against an executor — attorney's lien.*

Where the affidavits used by certain of the creditors of an absconding debtor to obtain warrants of attachment (although they state that the debtor departed from the State of New York with intent to defraud his creditors and to avoid the service of the summons upon him) fail to state any facts tending to sustain such charge, they are insufficient to sustain the attachments against a motion to vacate them. But where no such motion is made, and the money is paid to such creditors upon their judgments and the executions issued thereunder in the actions wherein the attachments were granted, in discharge of their liens, the question of the insufficiency of the affidavits is not, as against such attaching creditors, available to other creditors of the common debtor in an action brought to ascertain and determine the rights of the attaching creditors.

Where the summons in such an action is served by publication, the affidavit upon which the order for publication was obtained must comply with the statute in order to give the court jurisdiction. If the affiant does not comply with the statutory requirements the order of publication and the judgment will be void, and the plaintiffs will acquire no rights under or through mesne or final process issued thereunder.

So far as process which comes to the hands of the sheriff is regular on its face, he is justified in executing it.

General executions provided for by section 1369 of the Code of Civil Procedure were issued to a sheriff upon judgments recovered against an absconding debtor and were paid by the sheriff, and thereafter the amounts were refunded to such sheriff by the parties receiving the same, and special executions, in accordance with the provisions of section 1370 of the Code of Civil Procedure, were issued to him, upon which he paid respectively the amounts of such executions — the former executions being irregular and the latter regular upon

their face for the purpose of payment from the proceeds of attached property.

*Held*, that the error was cured by the refunding of the money, the issuing of executions in proper form and the satisfaction of them, although, the term of his office having expired, the sheriff had ceased to be such at the time the second executions were issued to him;

That the proceeds, applicable to the discharge by payment of the liens of the attachments, might be deemed to have been held by the sheriff for that purpose until paid in satisfaction of the second executions issued to him.

It was recited in an attachment that it appeared by affidavit "that the said defendant has absconded from the county of Orleans, the place of his residence, with intent to defraud his creditors." The affidavit upon which the attachment was issued stated the ground for the application to be that said debtor had departed from the State where he resided with intent to defraud his creditors, and certain facts were therein mentioned in support of such allegation.

*Held*, that although the recital of the attachment was not a sufficient ground for the issuance of such process, yet that, the attachment being supported by the allegation in the affidavit, the incomplete recital in the process was not fatal to its validity.

The provisions of section 1370 of the Code of Civil Procedure apply to an execution issued upon a judgment recovered in an action in which an attachment is issued and levied and the summons is not personally served. An execution in such an action issued in the form prescribed by section 1369 of the Code of Civil Procedure is void.

It is not required by statute that the execution upon which a sale of real property is made must be specified in the notice or certificate of sale.

The purpose of the levy of an attachment upon real property is to create a lien as of that time and such is its effect.

A judgment recovered in an action wherein an attachment has been issued, for the purpose of the execution of such judgment, relates to the time when the attachment was levied, and when the property is sold by the sheriff upon an execution issued on a judgment which was a prior lien to that of the attachment, the lien of the attachment is available in its relative order, upon the proceeds of the sale for the purpose of satisfying the judgment of the attaching creditor, or so much of it as the fund applicable to its payment will satisfy.

As to personal property, the execution first delivered to the sheriff is the first lien, although a levy is first made thereon by virtue of an execution subsequently delivered to him, but, to constitute the levy of an attachment upon real estate, it is necessary that the sheriff file with the clerk of the county in which the real property is situated a notice of the attachment, stating the names of the parties to the action, the amount of the plaintiff's claim, as stated in the process, and a description of the property levied upon, which notice must be also subscribed by the plaintiff's attorney.

The levy of an attachment is essential to make it available as a lien, or to create by it security for the payment of the judgment which may follow.

It is the duty of the sheriff to whom an attachment is delivered to levy it upon the property, real and personal, of the defendant, and, if there be more than one attachment, to levy them in the order in which they are received by him. If he neglects to levy such process he may be liable to the plaintiff for the consequence of his failure to do so.

The execution of the lien of an attachment is contingent upon the recovery of a judgment in the action in which the attachment was issued, and, as an actual levy is necessary to create the lien of an attachment upon property, when several attachments are levied upon the same real property, the order of preference or priority would be the same, and founded upon the like reason as that applicable to the levy of attachments on personal property.

Where a firm of attorneys has rendered services and paid out money in an action (which resulted in a judgment in favor of their client), and in other actions relating to the subject-matter of the first action (such services and disbursements equalling in value the amount of the judgment), such attorneys may be regarded as the equitable assignees of the judgment, and they have the right to satisfy their lien by process of execution.

The plaintiff, in an action brought to compel an accounting by an executor, is not entitled to an attachment, the statute not permitting the issuance of such process in such an action; but a warrant of attachment may be issued if the purpose of the action be to recover the amount of property and moneys which a former executor had converted to his own use, so far as the same remain unadministered by him, and if, for the purpose of such remedy, the existence of special circumstances be required to justify the Supreme Court in entertaining the action, such circumstances are shown by proof of the fact that the executor has left the State and is not subject to the jurisdiction of the Surrogate's Court.

Where services are rendered by attorneys to an executor in his capacity as such the liability of such executor therefor to his attorneys is personal.

APPEALS by the plaintiff, Joseph Van Camp, and by the defendants, George C. Buell and others, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Orleans on the 30th day of December, 1892, upon the decision of the court rendered after a trial at the Orleans Special Term.

The action was brought to have ascertained and determined the rights of the parties other than the sheriff to, and for the distribution of, the proceeds which came to the sheriff's hands of the property of Benjamin F. Van Camp, their debtor.

The proceeds of his real estate were . . . . . . . $6,175 00
Less the sheriff's fees for charges and
 expenses . . . . . . . . . . . . . . . . . . . . . . . . . . .   103 75
                                                             ─────────
    Leaving . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $6,071 25

| | | |
|---|---:|---:|
| The proceeds of the grass and fruit on the premises ........................... | $387 48 | |
| Less his charges, etc..................... | 35 53 | |
| Leaving...................................... | | $351 95 |
| The proceeds of personal property sold .... | $3,225 47 | |
| Less his charges........................ | 225 56 | |
| Leaving .................................... | | 2,999 91 |
| The proceeds of the accounts collected...... | $510 12 | |
| Less his charges ........................ | 3 05 | |
| Leaving.................................... | | 507 07 |
| Making together ........................... | | $9,930 18 |

The parties commenced actions against such debtor and proceeded to judgment against him, and in many of them warrants of attachment were issued against his property to the defendant Searle as sheriff of Orleans county.

*George Bullard,* for the appellants Orleans Co. N. Bank and Sawyer.

*Horace McGuire,* for the appellants Buell & Bloss.

*David N. Salisbury,* for the plaintiff and defendants Keeler & Salisbury.

*S. E. Filkins,* for the respondent Searle, sheriff.

*Signor & Wage,* for the respondents Blood and Jefferey.

*John Cunneen,* for the respondent Hallock.

*Thompson & Spencer,* for the respondents Rice and Briggs.

BRADLEY, J.:

The purpose of the action is the determination of the rights of the parties, other than the defendant Searle as sheriff, to the proceeds of the property of Benjamin F. Van Camp. He was treated as an absconding debtor. And in more than twenty actions instituted against him warrants of attachment against his property were issued

and delivered to Searle, the sheriff of Orleans county. Some of them were levied upon his personal property, and the others and the most of them were levied upon both real and personal property. And although, after the levy of the attachments, a large number of judgments were entered upon his confession, the controversy in this action has relation mainly to those parties in whose behalf attachments were issued and levied on the property of the debtor. The defendant Searle, as sheriff, paid out of the proceeds of the personal property the amounts of the judgments recovered by defendants Mary J. Blood, Dellie W. Blood, Bidelman, Chester, Coann and Rice, and returned the executions issued upon their judgments satisfied. He also paid to defendant Bruner ninety-six dollars and sixty-five cents of the amount of his execution. Warrants of attachment were issued in the actions in which those judgments were recovered, and the levy of them by the sheriff upon the personal property was prior to that in behalf of any other of the parties, and those payments, with the sheriff's fees and poundage, exhausted all the proceeds of the personal property except $110.82.

The payment of the executions in favor of the defendants Blood is challenged for the alleged reason that their warrants of attachment had not the support of affidavits sufficient to justify their issue, and a like objection is made to the order for service of the summons by publication. The affidavits to obtain those attachments were alike in their provisions, and while they stated that Van Camp had departed from this State with the intent to defraud his creditors and to avoid the service of a summons upon him, they failed to state any facts tending to support such charge, and were, therefore, insufficient to protect the attachments against a motion to vacate them.

But no such motion was made, and, as the money had been paid upon their judgments and executions in discharge of the lien, the question of the insufficiency of the affidavits is not, as against those parties, available to the appellants. (Code Civ. Proc. § 682; *Woodmansee* v. *Rogers*, 82 N. Y. 88.)

As the summons in each of those actions was served by publication, the sufficiency of the affidavits was essential to bring the actions within the jurisdiction of the court, and if they did not come up to the statutory requirement in support of the order of publication the judgments were void, and the plaintiffs in them acquired no rights

under or through mesne or final process in their actions. (*Fischer v. Langbein*, 103 N. Y. 84.)

The view taken is that the affidavits, upon which the orders of publication were founded, were such as to render the service of the summons made in each of those cases effectual.

The objection urged against the application of the payment to the satisfaction of Bidelman's execution relates only to the sufficiency of the affidavit upon which the attachment was issued. So far as the defendants Bidelman, Chester and Rice are concerned, what has been said about the payment of the executions of the Bloods is applicable to them, and in a like manner to the amount paid upon defendant Bruner's execution.

As Coann is not a party to this action no inquiry is required about the payment of his execution. And so far as the processes which came to the hands of the sheriff were regular on their face, he was justified in the execution of them. (*Savacool v. Broughton*, 5 Wend. 170; *Sheldon v. Van Buskirk*, 2 N. Y. 473; *Woolsey v. Morris*, 96 id. 315.)

The first executions which came to him upon the judgments of defendants Blood were general executions provided for by section 1369 of the Code of Civil Procedure, and he paid them. Afterwards, and before those defendants became parties to this action, they refunded to defendant Searle the amount so paid them, and thereupon special executions, according to the provisions of section 1370, were issued to him, and he paid to them thereon respectively the amounts of the executions. The former were irregular and the latter were regular upon their face for the purpose of collection or payment from the proceeds of the attached property. The error was cured by the refunding of the money and the issue of the executions in proper form, and the satisfaction of them, although by expiration of the term of his office the defendant Searle had ceased to be sheriff at the time the second executions were issued to him. (Code, § 706.)

The proceeds applicable to the discharge by payment of the liens of their attachments may be deemed to have been held by him for that purpose until paid in satisfaction of the executions issued to him, which were regular in form. (*Lynch v. Crary*, 52 N. Y. 184.)

And there seems to be no difficulty about the regularity on their face of the attachments and executions of the parties to whom the payments were so made, other than the attachment of the defendant Bidelman and the execution of the defendant Bruner.

In that attachment it was recited that it appears by the affidavit " that the said defendant has absconded from the county of Orleans, the place of his residence, with intent to defraud his creditors." The statute provides that the warrant " must briefly recite the ground of the attachment." (Code Civ. Proc. § 641.)

The recital in the Bidelman attachment is not a statutory ground for the issue of such process. (Id. § 636.) In the affidavit upon which it was issued the ground stated for the application is that Van Camp had departed from this State, where he resided, with the intent to defraud his creditors, and some facts and circumstances are there mentioned intended to support that allegation. And although somewhat slender they are such as to justify that conclusion and give support to the attachment. For that reason the incomplete recital in the process is not fatal to its validity.

The execution issued upon the judgment recovered by the defendant Bruner is not set out in the record, but the court found that it was issued in the form prescribed by section 1369 of the Code.

This was irregular, and as the provisions of section 1370 are imperatively applicable to an execution issued upon a judgment recovered in an action in which an attachment is issued and levied and the summons not personally served, the execution was void. (*Place* v. *Riley,* 98 N. Y. 1.) The sheriff, therefore, was not justified in making payment upon that execution. The question as to the validity or regularity of the payments made upon the executions of defendants Bidelman and Bruner is not raised by exceptions of any of the appellants other than Keeler and Salisbury.

The real estate of Van Camp upon which attachments were levied was sold by virtue of executions on the 15th day of February, 1889.

And on the part of the appellants other than Keeler & Salisbury and the plaintiff it is insisted that the proceeds of the sale were applicable only to the executions which were in the sheriff's hands at the time of the first publication of his notice of sale and at the time the sale was made, and that in consequence the proceeds of the sale were not applicable to the execution of the Cornelia Brown

judgment, the executions upon the judgments of Adason Kelsey, as administrator, etc., and of Keeler & Salisbury, or any of them.

By the notice first published October 29, 1888, the sheriff advertised the real estate for sale on the fifteenth of December following. In that notice he stated that by virtue of several executions issued out of the Supreme Court to him directed and delivered against the property of Benjamin F. Van Camp, he had seized all the right, title and interest which Van Camp had in the real property described, on June 11, 1888, or at any time thereafter, and that he would expose such property for sale December 15, 1888, at the hour and place mentioned. By notice dated the latter day he stated that the sale was postponed until February 15, 1889. And by further or supplementary notice, dated December 18, 1888, by him subscribed, the sheriff stated that by virtue of several attachments and executions issued out of the Supreme Court, wherein Orleans County National Bank and John G. Sawyer respectively were plaintiffs and Van Camp defendant, he had levied upon the right, title and interest which Van Camp had in the property described in the foregoing notice (before mentioned) on the 14th day of June, 1888, or at any time thereafter, and would sell the property on February 15, 1889, and then stated the amounts of such judgments of the bank and Sawyer. The property was sold on that day, and from the time of such postponement up to the time of the sale all of those notices were published together weekly.

By the certificate of sale the sheriff certified that he sold the property by virtue of executions issued on judgments recovered against Van Camp by Hallock, Briggs, Buell, Bloss & Buell, Orleans County National Bank and Sawyer respectively for the amounts stated in the certificate. The attachments in behalf of those judgment creditors were issued to the sheriff in the order they are above named except those of the bank and Sawyer. They were issued to him at one and the same time.

If the proceeds of the sale should be applied only to the payment of the executions in the sheriff's hands at the time of the sale they would thereby be fully satisfied. But such is not the judgment entered upon the direction of the trial court.

The distribution of the proceeds directed by the judgment was that they be applied to the payment of the Brown judgment and to

those of the attaching creditors in the order in which the attachments had been delivered to the sheriff.

The execution before mentioned upon the Brown judgment was issued pursuant to an order granting leave to issue it, and on or about the 1st day of December, 1888, was delivered to the sheriff; and although the original notice of sale had then been published for some weeks, the notice of postponement with that following it, as we have seen, was duly published and given by the sheriff for at least six weeks after the receipt by him of such execution. And there is no available objection founded upon the notice why the sale may not properly have been made by virtue of that execution. There was none in the fact that the sheriff stated in the notice that he had seized the right, title and interest which Van Camp had in the land on June 11, 1888. That was the day on which the first attachment was delivered to him. The lien of the Brown judgment was then prior to that of any of the attachments, and, so far as appears, there was no lien upon the premises between the time of the entry of such judgment and June 11, 1888.

The statute does not require that the execution upon which a sale of real property is made be specified in the notice or certificate of sale. (Code Civ. Proc. §§ 1434, 1438.) If, as it thus far appears, the sale may have been made by virtue of the Brown execution pursuant to the notice given by the sheriff of the sale, he was not at liberty to treat the sale as made only upon the other executions in his hands at the time of the sale. It must, therefore, for aught that yet appears, be deemed to have been made by virtue of that execution as well as of those mentioned in the certificate of sale.

The executions of the attaching creditors Keeler & Salisbury and Kelsey, as administrator, etc., were on the day of and prior to the sale withdrawn from the sheriff, and immediately after the sale executions upon their judgments were placed in his hands. It is urged on the part of the appellants other than the plaintiff and Keeler & Salisbury that those creditors, by withdrawing the executions, denied to themselves the right to have their judgments paid from the proceeds of the sale. This is so unless the levy of their attachments saves their right to share in such proceeds. The executions evidently were withdrawn to enable those creditors to redeem the property from the sale if they should be so advised. This they

could not do if their executions had remained in the sheriff's hands at the time of the sale, as then the sale would have been made on them as well as the others held by him. (Code Civ. Proc. § 1457; *Ex parte Paddock*, 4 Hill, 544.)

But those whose executions were withdrawn were attaching creditors, and their attachment liens were prior to those of the other appellants, and, assuming that the premises were sold upon the execution issued upon the Brown judgment, which was a lien senior to that of any of the attachments, the sale was such as to vest title, when perfected, in the purchaser, free from the lien of them, and it would seem that the proceeds, for the purposes of the lien of the attachments, became the substitute for the property upon which they were levied, else there would be no remedy of those attaching creditors whose executions were not in the sheriff's hands at the time of the sale, other than that of redemption. This would practically deny to them any benefit of the lien of their attachments.

The purpose of the levy of an attachment upon real property is to create a lien as of that time, and such is the effect of it, so that when a judgment is recovered in the action, it, for the purpose of the execution of such lien, has relation to the time the attachment was levied, and when the property is sold by the sheriff upon an execution issued on a judgment which is a prior lien to that of the attachment, the lien of the latter is available in its relative order upon the proceeds of the sale, for the purpose of satisfying the judgment of the attaching creditor, or so much of it as the fund applicable to its payment will satisfy. This was the right of all those creditors in the present case whose attachments were effectually levied upon the real property which was sold, whether or not their executions were in the hands of the sheriff at the time of the sale. (Code Civ. Proc. § 641.) And, therefore, the creditors whose executions were withdrawn from him, as before mentioned, were not, by the withdrawal of them, prejudiced in their right to take payment from the fund in the order of the lien of their attachments. For the purpose of obtaining such payment executions, in behalf of all the creditors to whom payment was by the judgment herein directed to be made, were issued and delivered to the sheriff.

It is insisted that the judgment recovered by Cornelia Brown against Van Camp was not effectual to support the execution issued

upon it, or to require the payment of it by the sheriff, because it had been set off against an equal amount of judgments of Van Camp against her; this had been done by an order of the court on his motion, but the order provided that such offset should not prejudice any lien which the defendants Keeler & Salisbury had upon the Brown judgment. They, as appears by the evidence and facts found by the court, were attorneys and counselors at law, constituting the firm of Keeler & Salisbury, and as such had rendered services and paid out money for her in the action in which the judgment was recovered, and in other actions relating to the subject-matter of that action, and such services rendered and disbursements made by them for her, and at her request, were at least equal in value and amount to that of such judgment.

They may be regarded as the equitable assignees of the judgment. (*Haight* v. *Holcomb*, 16 How. 160.) And they had the right to make it available by process of execution to satisfy their lien charged upon it. (Code Civ. Proc. § 66; *Martin* v. *Hawks*, 15 Johns. 405; *McGregor* v. *Comstock*, 28 N. Y. 240; *Goodrich* v. *McDonald*, 112 id. 157.) Those attorneys did not consent that any set-off be made of the judgment to the prejudice of their lien, and it was preserved by the terms of the order. And no reason appears why the existence and extent of their lien was not properly established by evidence in this action in support of the execution in their behalf as found by the trial court.

It is urged by the learned counsel for the appellants bank and Sawyer that the cause of the Kelsey action was not such as to permit the issue in it of the attachment in his behalf.

Prior to the time of the commencement of that action Benjamin F. Van Camp had been the executor of the last will and testament of Amos Kelsey, deceased, and, having failed to render his account as such, left the State under the circumstances which he did; his letters testamentary were by the surrogate revoked, and Adason Kelsey was appointed administrator with the will annexed, and thereupon the latter, as such administrator, commenced his action against Van Camp and caused an attachment therein to be issued against his property. The complaint was of considerable length, and by it, amongst other things, the plaintiff alleged that Van Camp, having property and money of the Kelsey estate in his hands, had

been required and failed to render to the surrogate his account; that he had been removed from his position of trust as executor and the letters testamentary issued to him revoked, and that he had " wrong-fully and unlawfully disposed of and converted the said property and moneys to his own use to the damage of said estate of the said Amos Kelsey of the sum of ten thousand dollars." Judgment against him was demanded accordingly.

The ground of the attachment, as recited in it, was that the action was brought to recover " a sum of money only as damages for a wrongful conversion of personal property as will more fully appear by the complaint, and that a cause of action exists against said defendant in favor of said plaintiff for the sum stated in said affi-davit, * * * and that the defendant Benjamin F. Van Camp has departed from the State of New York, where he has been a resi-dent, and with the intent to cheat and defraud his creditors and to avoid the service of a summons upon himself."

The complaint may import the purpose to recover against the defendant therein as for a conversion of personal property, and as such the action came within those cases in which the statute permits the issue of an attachment.

But, in view of all the allegations of the complaint, such was not necessarily the nature of the action, nor was it of the recovery, as appears by the facts proven before the referee and by his report upon which the judgment was entered.

If, as insisted on the part of those appellants, the action was for an accounting as such, the plaintiff in it was not entitled to an attachment and none could issue, because it would not then have come within the provisions of the statute permitting the issue of such process. (Code Civ. Proc. § 635; *Thorington* v. *Merrick,* 101 N. Y. 5; *Ackroyd* v. *Ackroyd,* 20 How. 93.)

And it has been held in *Morse* v. *Smith* (42 N. Y. St. Repr. 168) that unless special circumstances exist to permit an action therefor it will not be entertained to require an executor or administrator to render an account, as for such purpose the jurisdiction of the Surrogate's Court is deemed exclusive (Code Civ. Proc. § 2472, subd. 3) and whether, in the absence of such circumstances, this court has jurisdiction for such purpose was questioned in *Hard* v. *Ashley* (117 N. Y. 606).

The defendant in the Kelsey action had ceased to be executor at the time it was commenced. It was, therefore, not brought to require Van Camp to account with a view to have him administer the estate which had come to him of the decedent. Its purpose was to recover the amount of the property and moneys which he had as executor taken into his possession so far as the same remained unadministered by him. And if for the purpose of such remedy special circumstances were required they existed in the fact that he had left the State and was not subject to the direction of the Surrogate's Court. So far as related to the money into which he had converted the assets which came to him he had only partially administered them, and the plaintiff was entitled to the money.

And no reason appears why he could not maintain an action to recover it. In *Walton* v. *Walton* (1 Keyes, 15; 4 Abb. Ct. App. Dec. 512; 2 Abb. N. S. 428) it was held that such an action was maintainable by an administrator *de bonis non* against the personal representative of an executor who had died without having fully administered the assets which came to him. And Judge HOGEBOOM there remarked that an action may be brought by the plaintiff "to recover the property against any person in possession of it; trover or replevin if it exist in specie, * * * or assumpsit or other appropriate action if it has been converted into money."

The action was not necessarily one for an accounting, but, in view of what followed, may be treated as an action to recover the amount of money which in the execution of his trust Van Camp had derived from the assets which came to him as such executor, and which he was liable to pay over to the plaintiff, his successor. And it seems that, before the plaintiff in that action proceeded to judgment, Van Camp returned to this State and stipulated that on June 4, 1888, there was in his hands $1,840.31 in money belonging to the Amos Kelsey estate; that such money was subject to the payment of $622.62 to Keeler & Salisbury for legal services, etc. And he stipulated that judgment might be taken in the Kelsey action against him for $1,840.31, and interest from June 11, 1888, with costs. The judgment was accordingly entered December 7, 1888. We are inclined to think that the action was well brought by Kelsey as administrator, etc., against Van Camp, and that the alleged cause of action was such as to permit an attachment to issue.

The defendants Keeler & Salisbury, having commenced against Van Camp their action to recover for professional services performed for him in his matters as executor, etc., of Kelsey, deceased, procured a warrant of attachment to be issued therein to the sheriff June 13, 1888. It was levied upon the real and personal property of Van Camp. Afterwards, and before judgment, the attachment was levied upon certain accounts of Van Camp against persons for sums due from them to him, and thereafter the sum of $130.04 was collected by the sheriff on such accounts. Prior to the stipulation and judgment in the Kelsey action, and on December 3, 1888, Keeler & Salisbury recovered judgment in their action for $622.62 damages, and $119.98 costs. Afterwards an accounting was had by Van Camp in the Surrogate's Court, and on October 8, 1889, a decree was there made stating the amount of money, etc., of the Kelsey estate in his hands, and after referring to the recovery of the Kelsey judgment of December 7, 1888, against him, and the Keeler & Salisbury claim, for which he had not been credited, the decree directed that out of the funds of the estate of the decedent the administrator with the will annexed pay to Keeler & Salisbury $622.62, and interest, amounting together to $667.76. Thereafter, and on the same day, Adason Kelsey, as such administrator, assigned his judgment to the plaintiff in this action and received as the consideration of the assignment the full amount of it. And thereupon he, by written instrument to that effect, as such administrator, certified and acknowledged that he had, by such assignment, realized upon the surrogate's decree $2,186.66, being the amount of the judgment so assigned. On the same day Keeler & Salisbury assigned to the administrator the damages in their judgment against Van Camp, and received from him the amount of such damages; they reserved for themselves the costs on the judgment with the right to enforce it in their behalf to that extent. So that all that remained unsatisfied of the judgment recovered in their action was $119.98, the costs, and interest upon that sum.

The liability of Van Camp to Keeler & Salisbury was personal notwithstanding the fact that the services were performed for him in his business as executor of Kelsey's will. (*Mygatt* v. *Wilcox*, 1 Lans. 55; 45 N. Y. 306; *Bowman* v. *Tallman*, 2 Robt. 385.)

No reason now appears why the judgment to the extent of and for the costs included in it is not available to Keeler & Salisbury.

In respect to the proceeds of the accounts collected by the sheriff and of the sale of the real property the question arises as to the order in which the attaching creditors are entitled to payment, whether in the order of the receipt of the attachments by the sheriff or of the levy of them upon such property. The statute provides that where two or more warrants of attachment against the same defendant are delivered to the sheriff to be executed, their respective preferences are the same as where two or more executions against the property of the same defendant are delivered to the sheriff. (Code Civ. Proc. § 697.) And as to executions it is provided that the one first delivered to the sheriff to be executed has preference notwithstanding the levy is first made by virtue of an execution subsequently delivered to him. (Id. § 1406.)

Such is the rule applicable to personal property subject to levy of executions. (*Camp* v. *Chamberlain,* 5 Den. 198; *Peck* v. *Tiffany,* 2 N. Y. 451; *Pach* v. *Gilbert,* 124 id. 612.) But as the sheriff cannot take real property into his custody, it is necessary, to constitute the levy of an attachment upon it, that he file with the clerk of the county in which it is situated a notice of the attachment, stating the names of the parties to the action, the amount of the plaintiff's claim as stated in the process and a description of the property levied upon; the notice to be also subscribed by the plaintiff's attorney. (Code Civ. Proc. § 649.) The levy of an attachment is essential to make it available as a lien or to create by it security for payment of the judgment which may follow. (*Anthony* v. *Wood,* 96 N. Y. 180; *Warner* v. *Fourth N. Bank,* 115 id. 251.)

And it is the duty of the sheriff to whom an attachment is delivered to immediately levy it upon the property, personal and real, of the defendant, sufficient to satisfy the demand if it can be found. (Code Civ. Proc. § 644.) He is thus required to levy them, if there be more than one, in the order in which they are received by him. And for his neglect to levy such process he may be liable to the plaintiff for the consequences. (*Lewis* v. *Douglass,* 53 Hun, 587.)

In view of the duty imposed upon the officer in levying attachments, it was evidently contemplated by the statute that they would be levied in the order of their receipt by him, and for that reason there is no distinction in that respect made in its application to personal and real property, nor is our attention called to any case in

which any such distinction is observed since the repeal of the provisions of the Revised Statutes relating to attachments against absconding, etc., debtors. The provisions of section 697 of the Code of Civil Procedure since then may properly be applicable to attachments levied upon both kinds of property, and, therefore, it would seem that in cases where attachments are issued to the same officer the rule of preference relating to executions levied upon personal property is applicable to attachments levied upon property real as well as personal.

Under the present statute we think such must be the rule of distribution of the proceeds of the sale of real property among the attaching creditors who proceed to judgment, and it seems alike reasonable and just. In that view the sale upon executions issued upon some or one of the judgments of the attaching creditors gives them no advantage over the other creditors, which the lien of their attachments does not give them. (*Russell* v. *Gibbs*, 5 Cow. 390; *Rowe* v. *Richardson*, 5 Barb. 385.)

Since a judgment is a lien upon the real property of a judgment debtor no levy of execution issued upon it is made on such property. But if a levy were necessary and the land charged only by it, as has been and probably yet is the case in some of the States, the rule applicable to levy and sale upon executions of real and personal property would be substantially the same. (*Catlin* v. *Jackson*, 8 Johns. 520.)

The execution of the lien of an attachment is contingent upon the recovery of a judgment in the action in which it is issued.

Then it may be executed in the manner provided by the statute. (Code Civ. Proc. § 1370.) And as an actual levy is necessary to create the lien of an attachment upon property, it would seem that when several of them are levied upon the same real property of the defendant, the order of preference or priority would be the same and founded upon the like reason as that applicable to levy of attachments on his personal property in the absence of any different rule upon the subject. There seems to be none. And, therefore, the lien of the attachments levied upon the real property of Van Camp are entitled to priority in the order which they were delivered to the sheriff. (*Learned* v. *Vandenburgh*, 7 How. 379; 8 id. 77; *Yale* v. *Demick*, 20 id. 430; *Yale* v. *Matthews*, 12 Abb. 379.)

These views are in accord with the direction in the judgment for the distribution of the fund among the attaching creditors other than the defendant Bruner, to whom the payment before mentioned was made upon an execution irregular on its face and void for the purposes of collecting anything from the fund in question. And for want of an affidavit to justify the issuance of the Bruner attachment, the levy of it was ineffectual to support a lien of it upon the property. It was determined by the trial court to be void and so declared by the judgment.

A question is raised about the disposition of the proceeds received by the sheriff of the Van Camp accounts. As no attachment other than that of Keeler & Salisbury was levied upon them, it is not seen that any creditor other than they obtained any lien upon the accounts by them attached. Those upon which their attachment was levied produced only $130.04, which amount was sufficient to pay their judgment of $119.98, and they were entitled to its payment from the proceeds of the accounts upon which their attachment was levied. The assignment by Van Camp to Keeler & Salisbury of the proceeds of other of his accounts collected by the sheriff was not effectual to transfer to them title to such proceeds to the prejudice of the attaching creditors. When payment of the accounts was made by the debtors to the sheriff, the amount so received by him became charged with the lien of the attachments in his hands in the order of the delivery of them to him.

In view of the circumstances, the conclusion of the trial court that the sheriff is not chargeable with any greater rate or amount of interest on the fund than that realized by him from it was fairly justified, and such conclusion is sustained. The defendant Orleans County National Bank, having recovered a judgment against Van Camp September 14, 1888, by default upon the service of the summons by publication, afterwards, on November sixteenth, commenced against him an action upon the same claim by the personal service upon him in this State of the summons and complaint, and on December 7, 1888, recovered a judgment therein by default. It does not appear that any of the parties other than the judgment debtor could be prejudiced by the last-mentioned judgment. And whether or not it was by reason of the former judgment for the same cause rendered invalid is a question which none of the parties

other than he could legitimately raise for consideration.   He does not seek to attack it in this action.

If the first judgment was effectual to charge the defendant *in personam,* the other is useless.   But if, from any cause, it is not so, the second judgment may properly stand.

Therefore, without considering the question upon the merits, the conclusion of the trial court that the judgment was void, as well as the judgment to that effect, is not sustained.

These views lead to the conclusion that the payment by the defendant Searle, as sheriff, to the defendant Bruner of ninety-six dollars and sixty-five cents was made without due authority, and he was not justified in making it; that the defendants Keeler & Salisbury were entitled to priority in payment upon their judgment of or from the proceeds amounting to $130.04 of the accounts upon which their attachment was levied, and that the second judgment above mentioned of the Orleans County National Bank against Van Camp is treated as valid.

And so far as the judgment appealed from determines otherwise the judgment should be reversed, and in other respects affirmed.

The judgment should be thus modified, without costs to any party.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Judgment appealed from modified as indicated in the opinion, and, as so modified, affirmed, without costs of this appeal to either party; judgment to be settled by BRADLEY, J.